Argued May 27, affirmed September 10, reconsideration denied
October 15, petition for review denied November 25, 1975

STRODA, *Appellant, v.* STATE ex rel STATE
HIGHWAY COMMISSION et al (No. 71-2708),
*Respondents.*

539 P2d 1147

104

*James B. Griswold,* Portland, argued the cause for appellant. With him on the briefs were Green, Griswold & Pippin; and Jaqua & Wheatley, Portland.

*Edward H. Warren,* Portland, argued the cause for respondents State of Oregon by and through State Highway Commission, and Howard C. Johnson. With him on the brief were Wm. H. Mitchell, and Hershiser, Mitchell & Warren, Portland.

*Harold D. Gillis,* Eugene, argued the cause for respondent WEC, Inc. With him on the brief were Butler, Husk & Gleaves, Eugene.

*Richard Bryson,* Eugene, argued the cause for respondents Junction City Water Control District, The City of Junction City, Oregon, and Ralph Taylor. With him on the brief were Bryson & Robert; and Calkins & Calkins, Eugene.

*Richard W. Butler,* Eugene, argued the cause for respondents Clarence A. Durbin and Howard F. Durbin, dba C & H Durbin Construction Co. On the brief were Darst B. Atherly, and Thwing, Atherly & Butler, Eugene.

No appearance for respondent Ray V. Walter.

Before SCHWAB, Chief Judge, and THORNTON and LEE, Judges.

SCHWAB, C. J.

Plaintiff was injured when a tree fell onto a public highway and struck the vehicle which he was driving. Following a lengthy trial of plaintiff's action for personal injuries the jury returned a verdict in favor of all defendants. On appeal plaintiff makes 15 assignments of error, all of which fall into three classifications: (1) the trial court erred in dismissing the nuisance count of plaintiff's complaint on the ground that it added nothing to the negligence count; (2) the court erred in limiting the probative effect of depositions read at trial by ruling that the evidence thus produced could be considered only as to the individual deponents; and (3) the court erred in numerous respects in its jury instructions.

On August 4, 1969, plaintiff was driving a pickup truck south on Highway 99W, approximately seven miles north of Junction City. A cottonwood tree fell, injuring plaintiff. The tree came from a triangular-shaped grove of trees (Miller Grove) on the west side of the highway located on land owned by the state. In 1968 the state had granted a permit to the Junction City Water Control District to cross that land with an irrigation canal. The district hired a firm of engineers to design and a construction company to build the canal which was placed in use in the spring of 1969.

Basically plaintiff contends that the wrongful acts on the part of the defendants were locating the canal too close to the trees and the highway, the faulty design and construction of the canal allowing water to escape from the canal into the areas where trees were left standing—weakening the root structure, fail-

ure to remove the tree which fell, removal of other trees which constituted a windbreak, and failure to inspect the area and discover these defects after the canal was made operational.

The connection between the numerous defendants and Miller Grove is as follows:

The state of Oregon owned Miller Grove and issued a permit to the Junction City Water Control District for the irrigation canal to cross the land.

Howard Johnson was district engineer for the Oregon State Highway Commission (now a division of the Transportation Department), the agency in charge of the land in question.

WEC, Inc., was the engineering firm which contracted with the water control district to design and supervise the construction of the irrigation canal.[1]

Ray Walter was the WEC, Inc., engineer in charge of the project.

Junction City Water Control District owned the canal.

Ralph Taylor was manager of the water control district at the time of the accident.

Clarence and Howard Durbin were partners in a construction company which constructed the irrigation canal.

## I. The Court's Withdrawal of Plaintiff's Cause of Action Based on Nuisance

Plaintiff's first cause of action alleged negli-

[1] WEC, Inc., raises, as a defense (which it is permitted to do on an appeal under Taylor et ux v. Grant et al; Thornton et al, 220 Or 114, 349 P2d 282 (1960)), the fact that at the time the portion of the canal in question was constructed, October 3-23, 1968, it was operating as a partnership. The corporation, WEC, Inc., was not formed until October 28, 1968. WEC, Inc., argues that the corporation is not liable for the torts of the partnership. However, since we are affirming we need not consider this issue.

gence against each of the defendants. In his second cause of action plaintiff relied on a nuisance theory, stating:

"II

"Defendants, in leaving the hereinbefore described tree which struck plaintiff's vehicle in a standing position when the holding power of its root structure was weakened due to the saturation of the soil, and when its power to resist wind was reduced by virtue of the removal of the standing trees within the canal right-of-way, caused and created conditions constituting a nuisance to exist and plaintiff was injured thereby."

After both sides had presented their evidence, the court withdrew this cause of action from consideration by the jury on the grounds that it added nothing to the first cause of action alleging negligence.

The trial court's ruling was correct.

██ Nuisance refers to the interference with an interest or right of one party by some action on the part of another party. *See generally,* Prosser, Torts 573, § 87 (4th ed 1971). The interest invaded in the present case was plaintiff's right to travel on an unobstructed public highway. An invasion of this interest can give rise to an action for public nuisance, and where an individual has sustained special damages as a result of a public nuisance, he may maintain an action to recover them. *Wilson v. Parent,* 228 Or 354, 365 P2d 72 (1961).

██ However, not every action on the part of a defendant which causes interference with plaintiff's right to travel on an unobstructed highway constitutes a nuisance. The conduct which causes the interference must be of the type which the law recognizes as actionable. In *Raymond v. Southern Pacific Co.,* 259 Or 629, 488 P2d 460 (1971), the Supreme Court listed

the types of activities which could subject an actor to liability for creating a nuisance. These are negligent, reckless or intentional invasions of plaintiff's interests, or the operation of an abnormally dangerous activity. *See also, Macca v. Gen. Telephone Co. of N.W.,* 262 Or 414, 495 P2d 1193 (1972). Unless defendant's actions fall within one of these four categories, no cause of action for nuisance can arise.

A. *Abnormally dangerous activity.*

Plaintiff argues that the building and operation of an irrigation ditch constitutes an abnormally dangerous activity, and therefore defendants should be held strictly liable for any harm which results from this operation, irrespective of negligence.

Oregon has adopted the criteria contained in the Restatement (Second) of Torts for determining what constitutes an abnormally dangerous activity. *Nicolai v. Day,* 264 Or 354, 358, 506 P2d 483 (1973). The Restatement standard is:

"IN DETERMINING WHETHER AN ACTIVITY IS ABNORMALLY DANGEROUS, THE FOLLOWING FACTORS ARE TO BE CONSIDERED:

"(a) WHETHER THE ACTIVITY INVOLVES A HIGH DEGREE OF RISK OF SOME HARM TO THE PERSON, LAND OR CHATTELS OF OTHERS;

"(b) WHETHER THE GRAVITY OF THE HARM WHICH MAY RESULT FROM IT IS LIKELY TO BE GREAT;

"(c) WHETHER THE RISK CANNOT BE ELIMINATED BY THE EXERCISE OF REASONABLE CARE;

"(d) WHETHER THE ACTIVITY IS NOT A MATTER OF COMMON USAGE;

"(e) WHETHER THE ACTIVITY IS IN-

APPROPRIATE TO THE PLACE WHERE IT IS CARRIED ON; AND

"(f) THE VALUE OF THE ACTIVITY TO THE COMMUNITY." Restatement (Second) of Torts, § 520 (Tent Draft No. 10, 1964).

██ Whether a particular activity is to be classified as abnormally dangerous is a question of law to be decided by the court. *Loe et ux v. Lenhard et al,* 227 Or 242, 362 P2d 312 (1961). Since the construction and maintenance of an irrigation ditch in a rural area is a matter of common usage, not inappropriate to the area, valuable to the community, and does not involve a high degree of risk when reasonable care is exercised, the activity should not be classified as abnormally dangerous. *Reter v. Talent Irrigation District,* 258 Or 140, 482 P2d 170 (1971), holds that the irrigation of naturally dry orchard land is not an abnormally dangerous activity which would give rise to strict liability.

B. *Intentional injury.*

█ Plaintiff also argues that because defendants intended to build the irrigation canal which may have contributed to plaintiff's injury, he may recover on the theory of nuisance resulting from an intentional act. However, mere intention to build the irrigation canal is not sufficient to allow plaintiff's recovery on a theory of nuisance. The nuisance complained of in this case is allowing a weakened tree to stand next to a highway where it eventually obstructed plaintiff's travel. Plaintiff did not plead that defendants intended to obstruct his travel, or even that they intended to leave a dangerous tree next to the highway. Prosser defines intent as follows:

> "The intent with which tort liability is concerned is * * * an intent *to bring about a result* which will invade the interests of another in a way

that the law will not sanction * * *." (Emphasis supplied.) Prosser, Torts 31, § 8 (4th ed 1971).

The Restatement (Second) of Torts also requires an intent to produce a result rather than an intent to do an act which eventually leads to the result:

> "* * * If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness, as defined in § 500. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence * * *." Restatement (Second) of Torts § 8a, *Comment* b.

*See also, Gronn et ux v. Rogers Construction, Inc.,* 221 Or 226, 350 P2d 1086 (1960).

Since plaintiff did not allege that defendants actually intended to interfere with his travel on the highway, he could not have recovered on a theory of intentionally caused nuisance.

C. *Negligent injury.*

■ Since plaintiff lost on his negligence cause of action, he could not have won on a nuisance theory based on negligent conduct, because the facts relied on to support the negligence would be the same in both cases. However, plaintiff argues that he was prejudiced by the dismissal of the nuisance cause of action even if negligence were his only basis for recovery. He bases this on his contentions that (1) the defense of contributory negligence is not available in a cause of action for nuisance grounded in negligence, and (2) the defense of governmental immunity is not available where a government agency creates and maintains a nuisance.

These contentions are not relevant here. None of the defendants pleaded contributory negligence and the issue of governmental immunity was not submitted to the jury.[2]

D. *Reckless injury.*

■ It can be argued that recklessness should not be included as a separate category of behavior which can give rise to a cause of action for nuisance since any conduct which could be classified as reckless would also come within the definition of negligence.[3] *See,* Prosser, Torts 184, § 34 (4th ed 1971); *Williamson v. McKenna,* 223 Or 366, 354 P2d 56 (1960). In any event, even assuming that plaintiff alleged sufficient facts to constitute recklessness, plaintiff could not have lost on a negligence theory and won on a theory of nuisance caused by reckless conduct.

II. Admissibility of Deposition Testimony

Prior to trial, plaintiff took the depositions of four individual defendants—Johnson, Taylor, Walter, and Clarence Durbin. During trial plaintiff read portions of these depositions into evidence. The court ruled that the depositions were admissible only against the party who made them.

On appeal plaintiff relies on ORS 45.250, which was not called to the attention of the trial court:

"(1) At the trial or upon the hearing of a mo-

---

[2] Plaintiff's contention that the defenses of contributory negligence and governmental immunity are not available in an action seeking damages arising out of a nuisance is probably incorrect, at least where the nuisance is caused by merely negligent conduct. *See,* Furrer v. Talent Irrigation District, 258 Or 494, 466 P2d 605 (1971); Borden v. City of Salem, 249 Or 39, 436 P2d 734 (1968); Jarrett v. Wills, 235 Or 51, 383 P2d 995 (1963); Adams v. City of Toledo, 163 Or 185, 96 P2d 1078 (1939).

[3] Prosser, in his discussion of the types of conduct which can give rise to a cause of action for nuisance, lists only three categories: intentional invasion of plaintiff's interests, negligence or the conducting of an abnormally dangerous activity. Prosser, Torts 574, § 87 (4th ed 1971).

tion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any of the following provisions of this subsection:

"* * * * *

"(b) The deposition of a party, or of anyone who at the time of taking the deposition was an officer, director or managing agent of a public or private corporation, partnership or association which is a party, may be used by an adverse party *for any purpose.*" (Emphasis supplied.)

This statute was taken verbatim from former Rule 26 of the Federal Rules of Civil Procedure. The broad wording of the statute supports plaintiff's argument that the depositions should have been admitted as substantive evidence against all defendants. This conclusion is supported by federal decisions which hold that the phrase "for any purpose" should be broadly construed. *Riley v. Layton,* 329 F2d 53 (10th Cir 1964); *Merchants Motor Freight v. Downing,* 227 F2d 247 (8th Cir 1955). This rule has been interpreted in federal court to allow the deposition of a defendant to be used to impeach his codefendant. *Riley v. Layton,* supra.

■ The portions of the depositions which were read to the jury were admissible as substantive evidence against all defendants.

■ The next question is whether plaintiff properly preserved this assignment of error or waived it by acquiescence in the court's ruling. After the court made its ruling the following colloquy took place:

"THE COURT: Well, all right. It's probative evidence, but not as to any other defendant, is it?

"* * * * *

"THE COURT: I'm suggesting though if you want to use that from the other defendants you better hear it from the witness stand, because the statement of an adverse party is admissible into evidence as to that party, and that's to refer specifically to—

"* * * [Plaintiff's attorney]: (Interrupting) Yes, sir, *I agree with that and I'll be glad to follow the Court's suggestion.*

"THE COURT: All right * * *." (Emphasis supplied.)

The court then told the jury:

"* * * I want to advise you that the deposition of any defendant—and indeed any statement of any defendant made outside the Court and brought to your attention—is evidence in the case *only against that particular defendant and may not be considered as evidence in the case as against any other defendant.* The theory of this is that where there are a number of defendants in a case, a defendant may be held responsible for what he has said, and you're entitled to hear what he may have said as evidence against that defendant. But no other defendant is in any way responsible for that statement. And as to any other defendant, such a statement is purely hearsay."

Plaintiff's counsel then said:

"* * * Could I ask the Court on the Court's ruling on the deposition of Mr. Walter that I'm going to read from, I think that his admissions would apply to himself and also to WEC, Inc. as the—well, maybe I should read the portion thereof and the Court can make the ruling. I think that is part of the deposition.

"THE COURT: Well, for the time being what I've told the jury stands. If there's some reason to make some contrary determination in this case, I'll advise them later."

Plaintiff's counsel at another point stated that he thought defendant Johnson's statements in his deposition were probative evidence against the highway commission. Since plaintiff objected to the court's ruling that the depositions could not be considered against those vicariously responsible for the deponents' acts, we turn to the issue of prejudice.

■ All four of the deponents were present and testified at the trial in this case. They were subject to cross-examination by plaintiff's counsel and testified concerning essentially the same matters which were mentioned in their depositions. Plaintiff's counsel specifically stated his intention to elicit on the stand from each deponent the same testimony which is contained in his deposition. To the extent that the same testimony was elicited from the deponents on the stand, no prejudice resulted from the limiting instruction. *Pursche v. Atlas Scraper and Engineering Co.*, 300 F2d 467 (9th Cir), 132 PQ 104 (1961), *cert denied* 371 US 911 (1962); *McCarty v. Hedges et al*, 212 Or 497, 309 P2d 186, 321 P2d 285 (1958); *Lambe v. Reardon*, 69 NJ Super 57, 173 A2d 520 (1961).

Plaintiff contends that two of the deponents—Walter, and Clarence Durbin—changed their stories on a particular issue between the time their depositions were taken and the time of trial. The particular issue concerning which the claimed contradiction exists is complicated and requires some explanation. At the point where the irrigation ditch crossed the line between the property to the south (the Kirkham property) and the land owned by the state, it crossed a pond, referred to during the trial as the Miller-Kirkham Pond. Also running through this pond and crossing the path of the irrigation ditch is an old natural drainage ditch which ran through Miller Grove. The point at issue was whether an embankment was constructed on the east side of the irrigation ditch where

it is crossed by the old drainage ditch (circled on diagram) in order to prevent water from escaping from the irrigation ditch into the old ditch and into Miller Grove. The testimony is confusing because at different times the witnesses referred to each of the two ponds without clearly differentiating between them, and there is some confusion between the terms "bank" (the side of a lowered ditch) and "embankment" (the raised side of a ditch). Also, the witnesses and attorneys sometimes pointed to exhibits and diagrams without clearly indicating for the record exactly to which areas of the diagrams they were referring. Despite the confusion, we conclude that there were contradictions between the depositions of defendants Durbin and Walter and their testimony at trial.

*Clarence Durbin:*

The portion of Durbin's deposition which was read at trial contained the following statements:

"Question: But there was no bank on the east side of that ditch any place from line A [the Miller-Kirkham property line] on down to the bridge as I understand it?

"Answer: Not a bank as we would call a nice formed bank.

"Question: Was there anything that would prevent the water from getting into the area between the ditch easement and the roadway?

"Answer: I'm not sure.

"Question: Do you recall anything?

"Answer: No.

"* * * * *

"Question: So it would be possible then, in fact, for the water to flow out of the ditch through some of those spots that were not as high as the others?

"Answer: Possibly."

This portion of the deposition was read again by plaintiff's attorney for impeachment purposes during his cross-examination of Durbin. At trial Durbin first testified that he could state as a matter of fact that an embankment was built in the area circled on the diagram because he had seen it. He later stated that his only reason for saying that an embankment had been built was that if the plans and the topography called for an embankment it would have been installed. Durbin's statement in his deposition was about the entire portion of the ditch between the Miller-Kirkham property line and the Miller Pond. The area concerning which he contradicted himself was the much smaller area near the property line where the two ditches cross. Durbin stated at trial that except for this small area, no embankment was built. He also stated that he had misinterpreted the question in the deposition.

*Walter:*

■ The contradiction in Walter's testimony concerns the same issue as that in Durbin's testimony: whether an embankment was constructed at the point where the two ditches crossed. The specific contradiction was the following statement of Walter's at trial:

"Q [By plaintiff's attorney]. I want to know whether any effort was made during the time the irrigation ditch was installed, any bank or any other means made to block the inlet of water from the ditch to the standing water area or the outlet from that standing water area?

"A. There was an effort to block it where we crossed the Kirkham property line, and the rest of the construction through the area on over to the Reader road was to improve the flow capabilities of the area.",

which contradicted the following answer contained in his deposition:

> "Question: Was any effort made to block off the inlet or the outlet or to bank along the sides of the old standing water as a part of this construction job?
>
> "Answer: No."

This is the only contradiction we have noted between Walter's statements at trial and his deposition. This portion of Walter's deposition was not introduced as part of plaintiff's case in chief; it was introduced only for impeachment purposes. Plaintiff cannot now contend that the statement should have been admitted as probative evidence against all defendants when he offered it only for impeachment purposes.

Thus we here deal only with Durbin's statement in his deposition that no bank was constructed north of the Miller-Kirkham property line and his statement during trial that an embankment was constructed where the two ditches crossed.

■ As previously noted, plaintiff waived his objection to the court's ruling limiting the use of the deposition testimony against codefendants as to all parties except those vicariously liable for the acts of the deponent. Although plaintiff did not specifically object to the court's ruling on the ground that Durbin's statement should be admitted as evidence against the partnership,[4] such an objection can be implied from his similar objections with regard to the limitations on deposition testimony of defendants Johnson and Walter. Plaintiff can claim prejudice only because the court refused to allow the use of the deposition as probative evidence against Howard Durbin, Clarence Durbin's partner in the C & H Durbin Construction Company. In view of the fact that (1) the contra-

---

[4] Under ORS 68.230 the admissions of a partner are admissible as evidence against the partnership.

diction was read at trial to impeach Clarence Durbin's testimony, (2) Durbin's statement that an embankment was actually constructed was considerably weakened on cross-examination, (3) there was other testimony on this issue by other witnesses, and (4) the jury found no liability on the part of Clarence Durbin against whom the statement was used as probative evidence, we find that the ruling of the trial judge was not prejudicial.

During its instructions to the jury the court made the following statement:

> "* * * And I would remind you that in connection with some statements of some of the parties that have been presented in this trial, I have told you at the time that such statements could not be used against any party other than the one who had made the statement, and I remind you of that at this time."

This instruction was not requested by any of the parties. Plaintiff argues that this instruction was confusing and misleading in that it did not clearly limit its application to deposition testimony and could be interpreted to apply to other statements of other witnesses.

██ The instruction was not a model of clarity. However, it does specifically refer back to an instruction previously given concerning the use of "some statements of some of the parties." And the challenged instruction immediately follows an instruction relating to out-of-court admissions and statements which ended with the following instruction:

> "* * * [Y]ou are authorized to consider such admissions or statements for what you deem them to be worth against the party making them, but in reaching such a result you must, for the reasons given, proceed with caution * * *."

In *Waterway Terminals v. P. S. Lord,* 256 Or

361, 474 P2d 309 (1970), the Supreme Court set out the standard for reversing cases on the grounds of misleading or erroneous jury instructions:

"* * * [C]ases should not be reversed upon instructions, despite technical imperfections, unless the appellate court can fairly say that the instruction probably created an erroneous impression of the law in the minds of the jurymen which affected the outcome of the case * * *. The instruction was not given in a vacuum but in reference to the contentions of the parties in their pleadings and to the other instructions which were given * * *." 256 Or at 370.

Under this test the instruction was not so indefinite or misleading as to require reversal.

III. The Instructions.

Plaintiff contends that the court erred in 12 different additional respects in connection with the jury instructions. A few of the assignments of error relative to the instructions present close questions. However, when we consider the jury charge in its entirety and measure it by the standards set forth in *Waterway Terminals,* we cannot say that we find error in the instructions justifying reversal.

Affirmed.