Argued November 25, 1975, affirmed January 19, 1976

KEELAND, *Respondent,*
*v.*
YAMHILL COUNTY, *Appellant.*
(No. 29690, CA 4388)
545 P2d 137

*Robert M. Johnstone,* McMinnville, argued the cause and filed the brief for appellant. With him on the brief were Marsh, Marsh, Cushing & Haugeberg, McMinnville.

*R. Ladd Lonnquist,* Portland, argued the cause and filed the brief for respondent. With him on the brief were Pozzi, Wilson & Atchison, Portland.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Plaintiff, while confined with 10 or 12 other men in a dormitory cell in the Yamhill County jail, was injured when one of the inmates threw a razor blade at him. His negligence action against the defendant resulted in a plaintiff's verdict. The defendant's assignments of error on appeal present five questions: (1) Was the county immune from tort liability? (2) Assuming tort liability, was there any evidence of negligence? (3) Was a witness offered as an expert qualified as such? (4) Did a hypothetical question put to the expert witness constitute prejudicial error because of a misstatement of fact? (5) Did certain statements made by plaintiff's counsel in his argument to the jury constitute prejudicial error?

### (1) Immunity

The plaintiff's amended complaint, upon which issue was joined, alleged that the defendant was negligent "[i]n allowing Michael Huitt to be confined in a cell with plaintiff while in possession of a razor blade when the defendant knew or in the exercise of reasonable care should have known that Michael Huitt was assaultive and combative in nature and had assaulted other prisoners during the period of his incarceration and that possession of razor blades by prisoners within a cell created a substantial risk of harm to other prisoners, particularly in the hands of prisoners who were assaultive and combative in nature."

The original complaint had simply alleged that the defendant was negligent in allowing prisoners in a communal cell to possess razor blades. For some reason which is not readily apparent the trial court held that the original complaint alleged a discretionary function for which the county was immune from tort liability under ORS 30.265(2)(d)[1] but that the amended allega-

---

[1] "(2) Every public body is immune from liability for:

"* * * * *'

"(d) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." ORS 30.265(2)(d).

[ 87 ]

tion alleged a ministerial as distinguished from a discretionary function.

■ The leading Oregon case dealing with the question of what public functions are immune from tort liability is *Smith v. Cooper,* 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970). In attempting to resolve this perplexing problem, the court there stated:

"The most decisive factor but one most difficult to articulate is that it is essential for efficient government that certain decisions of the executive or legislative branches of the government should not be reviewed by a court or jury. The reason behind such factor is that the bases for the legislative or executive decision can cover the whole spectrum of the ingredients for governmental decisions such as the availability of funds, public acceptance, order of priority, etc." 256 Or at 506.

The court conceded, however, that:

"* * * A line differentiating ministerial functions from those which are discretionary has never been clearly drawn. This court and many others have had difficulty with this task." 256 Or at 495.

The court concluded:

"* * * that at some point along the continuum of discretion a division must be made with liability on one side and immunity on the other and this division must necessarily be arbitrary." 256 Or at 499.

Suffice it to say that we place the decision as to whether inmates of a dormitory cell should possess razor blades on the ministerial side of the point of division.

## (2) Evidence of Negligence

Except for a doctor and a witness who testified solely on a technical matter not involved in any of the issues raised here, the jury heard only three witnesses —the plaintiff, the sheriff of Yamhill County and a captain in the Multnomah County sheriff's department who testified as an expert witness. The record contains the following:

[ 88 ]

On the day plaintiff was injured he was confined in a 24-bed community cell together with 10 or more other prisoners. One jailer was in charge of all jail facilities for men. His duties included dispatching cars in the area, clerical work, taking care of the men prisoners, serving the meals, booking new prisoners and releasing prisoners. This jailer had no visual contact over the inmates in the community cell, was separated from the inmates by six locked doors and was specifically instructed never to enter the community cell alone.

Sometime prior to the date of plaintiff's injury Michael Huitt, the prisoner who threw the razor blade which injured plaintiff, had wrapped tissue paper around the legs of a sleeping inmate, Ronald Hayes, and set it afire. As a result, Hayes' blanket was burned and a new one was issued to him. Huitt had been throwing his razor blade about in the cell for a considerable length of time prior to injuring plaintiff. Huitt, who had been in jail for several months prior to the incident, was physically large and had a domineering personality. He was referred to by the other prisoners as "chief." The sheriff assumed that razor blades were thrown about frequently but nonetheless felt justified in issuing razor blades to inmates without recouping them after use and without keeping records as to how many blades were in the cell at any time. He knew that fires in the cell were not uncommon, that in fact they happened all the time, but were what he characterized as only "minimal" incidents. The Restatement of Torts provides:

> "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor

[ 89 ]

"(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and

"(b) knows or should know of the necessity and opportunity for exercising such control." 2 Restatement (Second) of Torts § 320 (1965).

■ We cannot say as a matter of law that a reasonable person could not find that, under the facts set forth above, supervision of the community jail cell in question was inadequate. It follows that the issue of negligence was properly submitted to the jury.

### (3) The Qualifications of the Expert Witness

■ Defendant argues that even though the expert was generally qualified because of his education and experience, he was not qualified in this case because he was not familiar with the Yamhill County jail. Defendant cannot prevail on this point. *Wall v. S.E.C. Co.,* 270 Or 553, 528 P2d 1054 (1974), holds:

"* * * The qualifications of an expert witness are ordinarily a matter within the discretion of the trial court. *Denny v. Warren,* 239 Or 401, 408, 398 P2d 123 (1964). We think that there was no abuse of discretion in this case. The fact that this witness was not familiar with this particular store and the fact that the grocery stores operated by him had not been in 'remote areas' did not disqualify him as a witness, as a matter of law, although they were facts which went to the weight of his testimony." 270 Or at 572.

### (4) The Hypothetical Question

The facts included in the hypothetical question were: In the Yamhill County jail all male inmates are issued razor blades and allowed to keep them in a common cell and the jailer had knowledge that one of the inmates in the cell containing 10 to 20 other prisoners had wrapped the legs of a sleeping inmate with toilet paper and lighted it causing burn damage to the inmate's blanket and very minor injury to the inmate. On the basis of these facts the expert was asked what would be the proper procedure to follow with regard to

the individual who had set the fire. The expert's answer over objection was that such a person should be isolated. The defendant objected to the question on the grounds that there was no evidence of knowledge by the jailer of this incident or that any injury had resulted from it. The court allowed the witness to answer the question over objection after being assured by plaintiff's counsel that such evidence would in fact be produced.

■ *Peterson v. Schlottman,* 237 Or 484, 392 P2d 262 (1964), tells us that facts assumed in a hypothetical question must be supported by evidence in the case — that if the court allows a question based upon a fact not yet in evidence upon the representation that the facts will be developed later but they are not, the remedy is a motion to strike. Although defendant's counsel did not move to strike after plaintiff rested, he did move for a mistrial.

■ Because the hypothetical question erroneously assumed certain facts, it does not follow that we should reverse and remand. Only error which is in our judgment prejudicial warrants reversal. In *Valdin v. Holteen and Nordstrom,* 199 Or 134, 260 P2d 504 (1953), the court (citing from *Wilson et ux. v. Kruse,* 199 Or 1, 7, 258 P2d 112 (1953)) said:

> " 'The instruction was undoubtedly abstract and therefore erroneous, but under the liberal rule laid down in later cases, particularly Godvig v. Lopez, 185 Or 301, 202 P2d 935, before a reversal is ordered it must appear that such an instruction is prejudicial, and in determining such, "The court must be able to see that under the circumstances disclosed by the record, *the jury may have been, and probably were, misled,* to the injury of the complaining party." ' " 199 Or at 157-58. (Emphasis supplied.)

*See also, Stroda v. State Highway Comm.,* 22 Or App 403, 539 P2d 1147 (1975).

■ Taking the record in this case as a whole, we are satisfied that it is unlikely that the jury was misled by

the hypothetical question. Before the judge allowed the witness to answer the question, he told the jury:

"All right. Counsel for the Plaintiff has just made inquiry of this witness on a hypothetical question in which he asked the witness to assume certain facts. This is the only way that you can make inquiry of a witness who does not have personal knowledge what happened, ask the witness to assume certain facts. *It's up to you to decide whether or not those facts really existed in the case.*" (Emphasis supplied.)

In his argument to the jury at the conclusion of the presentation of the testimony, plaintiff's counsel made it clear to the jury that he had not been able to produce such evidence. He said:

"I'm going to be the first to admit that the case that we put on for the County's knowledge does not show any direct proof that the County knew that Huitt was dangerous. We didn't have any proof. We tried to subpoena Mr. Hayes here, we put on the deputy that tried to obtain Mr. Hayes [to show that he was unavailable]."

There was evidence from which the jury could have found that Huitt had burned Hayes' blanket and that Hayes had turned in his blanket for a new one. The record taken as a whole makes it clear that plaintiff's position with regard to this incident was that it was negligent for the jailer, when put upon notice that there had been a fire in a communal cell, not to at least make inquiry as to the cause of the fire. Plaintiff's theory obviously was that such an inquiry might well have disclosed the cause of the damage to the blanket which in turn, if proper precautions were followed, would have resulted in Huitt's isolation, which would have avoided the subsequent injury to plaintiff. The misstatement of fact in the hypothetical question did not constitute reversible error.

### (5) The Jury Argument

■ With regard to this issue we note that defendant made three objections during the course of plaintiff's closing argument. None of these objections was addressed to the remarks which are set forth *haec*

[ 92 ]

*verba* in defendant's brief on appeal. In its brief defendant does allude to other portions of the closing argument to which it did object but does not set out verbatim the pertinent portions of the record as required by Rule 6.18[2] of this court. We nevertheless have considered the entire closing argument, which was relatively brief, and find nothing in it which comes even close to constituting prejudicial misconduct.

Affirmed.

---

[2]

"* * * * *

"Each assignment of error shall be clearly and succinctly stated under a separate and appropriate heading. The assignment of error must be specific and must set out verbatim the pertinent portions of the record.

"* * * * *." Rule 6.18, Rules of Procedure, Supreme Court and Court of Appeals of the State of Oregon.