Argued November 3, 1972, affirmed February 1, 1973

NICOLAI, *Appellant, v.* DAY ET UX, *Respondents.*

506 P2d 483

*George M. Joseph,* Portland, argued the cause for appellant. With him on the brief were Bemis, Breathouwer & Joseph, Portland.

*Carrell F. Bradley,* Hillsboro, argued the cause for respondents. With him on the brief were Schwenn, Bradley, Batchelor & Bailey, Hillsboro.

O'CONNELL, C. J.

Plaintiff brought this action to recover damages when a part of defendants' land slid down upon plaintiff's land and caused injury to structures and other improvements thereon. The jury returned a verdict for defendants Day and plaintiff appeals.

Plaintiff's complaint alleged as follows:

"IV

"During January and February of 1970, large quantities of fill dirt, mud and debris piled on defendants' property, slid from the property of the defendants, and each of them, onto the property of plaintiff.

"V

"As a proximate result of sliding of defendants' land upon the plaintiff's land, plaintiff's land was depreciated in the sum of $40,000.00.

"VI

"Defendants, and each of them, knowing their respective lands lay in a precarious position and would slide onto plaintiff's land, and that plaintiff's property would be damaged, failed to take any precautions to prevent such slide."

The "fill" referred to in the complaint was made by the Days' predecessor in title. The fill created a slope varying from 45° to 60°. In 1963, contiguous land owned by Fisher to the east of the Day premises began to slide after Fisher built a house on his land. Fisher's house was built with massive and deep concrete basement walls which created a dam effect against the flow of surface and subsurface water. The pressure of the structure and the accumulated subsurface water caused the Fisher land to slide.

The Days called upon a consulting engineer, Cooper, to prevent a similar slipping of their land. Upon Cooper's advice, the Days removed a large quantity of the old fill and substituted coarse sand to provide a means of drainage of subsurface water and thus reduce the pressure of accumulated water. Deep holes were dug into both Fisher's and Day's land and perforated pipe surrounded by gravel was inserted in the holes to collect the underground water. The water thus collected was then pumped into the city storm sewer. As a further measure to prevent their land from sliding, the Days constructed their house on pilings driven through the fill. This avoided the pressure on the fill from the weight of the house and reduced the damming effect which would have been produced by the construction of concrete basement walls.

In 1966, contiguous land to the west, owned by defendants Vandercook, began to slide down upon plaintiff's land. Surface water from the Vandercook parcel also ran down onto plaintiff's land and caused damage to plaintiff's buildings and other improvements.

The slide from the Days property, which caused

the damage for which this action was brought, occurred in 1970. That the 1970 slide would not have occurred had it not been for the conduct of the Vandercooks in directing water from their land onto the Day premises is made clear by Cooper's testimony:

"Q Well, would the weight of the earth on the Day property—did it—would this earth have slipped down there without this washing action by the Vandercook water.

"A It just physically is not a reasonable statement to make at all. It wouldn't have done it, because there is no water here off of the Day property to do this. All the water came from here, and did this. Then, after this initial slide, then additional earth here got saturated, and it slid, additional earth came off the Day's property at about this area, all instituted by water pouring down here. And it still is today.

"Q All right. Now, is this a true earth slide, or [is] this a wash?

"A No. In my opinion, it's not a true slide, because a true earth slide is one in which ground water starts this action by saturating the soil deeply to the point where this large wedge suddenly goes. This, by contrast, is what I call a surface slide, because it all was started by water pouring over the surface, cutting a trench through here; then, saturating the surface,—the soil at the surface, and the surface portion is a wedge—it's a wedge of surface soil that went down rather than the failure of soil or the slippage of the soil occurring down to what we call the toe, which is way down below, such as it occurred under the Fisher house originally.

"* * * * *

"Q Now, would this wash or this slide have occurred had it not been for the water on the Day —on the Vandercook property?

"A No, it would not. In my opinion, without

this water here, it's rather stable enough to hold its position."

Plaintiff contends that the trial court erred in refusing to rule that defendants were strictly liable as a matter of law for carrying on an ultrahazardous activity. Error is also assigned for the court's refusal to give the following requested instruction:

"The maintenance of substantial fill dirt of an unstable character on a steep slope is hazardous activity. A person who engages in hazardous activity that results in the invasion of neighboring land is guilty of trespass.

"If you find from a preponderance of all the evidence the defendant knew of the unstable character of the fill material and that harm to the neighboring land owner was highly probable if the fill material slid, then defendants would be guilty of trespass."

The trial court properly held that defendants' conduct did not constitute an ultrahazardous activity. As we said in *Loe et ux v. Lenhardt et al*, 227 Or 242, 249, 362 P2d 312 (1961), "it is the duty of the court to decide as a matter of law whether a given activity, in a given factual setting, is or is not extra hazardous."

██ It is our opinion that the failure of defendant Day to remove a dirt fill placed upon his land by his predecessor in title did not, under the circumstances of this case, constitute an ultrahazardous or abnormally dangerous activity. The factors which are to be considered in determining whether an activity is abnormally dangerous are as follows:

"(a) WHETHER THE ACTIVITY INVOLVES A HIGH DEGREE OF RISK OF SOME HARM TO THE PERSON, LAND OR CHATTELS OF OTHERS:

"(b) WHETHER THE GRAVITY OF THE

HARM WHICH MAY RESULT FROM IT IS LIKELY TO BE GREAT:

"(c) WHETHER THE RISK CANNOT BE ELIMINATED BY THE EXERCISE OF REASONABLE CARE:

"(d) WHETHER THE ACTIVITY IS NOT A MATTER OF COMMON USAGE:

"(e) WHETHER THE ACTIVITY IS INAPPROPRIATE TO THE PLACE WHERE IT IS CARRIED ON: AND

"(f) THE VALUE OF THE ACTIVITY TO THE COMMUNITY." Restatement (Second) of Torts, Tentative Draft No. 10, § 520 (Apr. 20, 1964).

Without purporting to treat each of the factors listed above, we believe that the "activity" in this case was not one in which "the risk cannot be eliminated by the exercise of reasonable care" (listed as factor (c) above).[1] Indeed, plaintiff's brief contains a concession to this effect. She argues: "The defendants had the ability to prevent the harm to her and had, in fact, taken extensive steps to prevent the same hillside from sliding away and doing severe damage to them. But they took no precautions to avoid the damage to the plaintiff." And again: "That it was possible for the defendants to eliminate the risk is strongly indicated by the fact that they successfully stabilized that part of the filled hillside which threatened to slide away and destroy their own home."

There is no evidence in the present case from which it can be concluded that the Days were carrying on or maintaining an ultrahazardous activity.

---

[1] See, e.g., McLane v. Northwest Natural Gas, 255 Or 324, 328, 467 P2d 635 (1970) and Bedell v. Goulter, 199 Or 344, 353, 261 P2d 842 (1953). Cf., Beck v. Bel Air Properties, 134 Cal App2d 834, 286 P2d 503 (1955).

It is our conclusion, then, that the trial court did not err in failing to rule or to instruct the jury that defendant was strictly liable.

It is further contended that the trial court erred in withdrawing the issue of punitive damages from the jury. We find no evidence in the record which would justify the submission of this question to the jury.

The judgment is affirmed.

McALLISTER, J., concurs in the result.