Argued and submitted April 10, resubmitted in banc November 4,
reversed and remanded with instructions to enter a judgment
in favor of plaintiffs December 7, 1981, reconsideration denied February 4,
petition for review allowed March 16, 1982 (292 Or 722)
See later issue Oregon Reports

# KOOS et al,
*Appellants,*

*v.*

# ROTH,
*Respondent.*

## (No. 50967, CA 18924)

637 P2d 167

Dean M. Quick, Albany, argued the cause for appellants. With him on the briefs was Weatherford, Thompson, Brickey & Powers, P.C., Albany.

Paul D. Clayton, Eugene, argued the cause for respondent. With him on the brief was Luvaas, Cobb, Richards & Fraser, P.C., Eugene.

Michael F. McClain, and McClain & Brown, Corvallis, filed a brief amicus curiae for Field Burning Defense Committee.

THORNTON, J.

RICHARDSON, J., dissenting opinion.

## THORNTON, J.

The issue presented in this appeal is liability for the escape of a field burning fire. Defendant is a commercial grass seed grower. Plaintiffs brought this action to recover for property damage they allege was caused by the escape of a field burning fire from defendant's property to their own. At trial, both parties moved for directed verdicts. Plaintiffs' motion was denied and defendant's motion was allowed. On appeal, plaintiffs assign error only to the denial of their own motion. We reverse.

■■ Plaintiffs are the owners of property which is adjacent to property leased by defendant. The properties are located in Linn County, in proximity to the I-5 freeway. Defendant conducts grass seed farming operations on his land. On August 8, 1977, he and several others set a field burning fire on his property, which apparently escaped to plaintiffs' property[1] and caused damage in an amount the parties stipulated to be $8,017. Plaintiffs contended at trial that (a) defendant was negligent, (b) that he was strictly liable in trespass and (c) that he was strictly liable because field burning is an ultrahazardous activity.[2] There was little if any substantial evidence of negligence. There was no evidence of the exact manner of the escape of the fire from defendant's to plaintiffs' property. The most likely reason according to the witnesses was that a whirlwind had picked up burning material from defendant's field fire and deposited it on plaintiffs' property. On appeal, plaintiffs have abandoned their negligence theory, but contend that they are entitled to judgment as a matter of law on either or both of their strict liability theories.[3]

---

[1] The evidence was strong that the fire on defendant's property was the source of the fire on plaintiffs' land. It is not clear to us, however, that the evidence was such that the causation question should have been taken from the jury. Because defendant does not argue that the trial court's denial of plaintiffs' motion for a directed verdict should be affirmed, without more, on the ground that causation was a jury question, we do not address that issue.

[2] The terms "ultrahazardous," "extrahazardous," and "abnormally dangerous" appear in the authorities quoted in this opinion. They are synonymous.

[3] We expressed concern at oral argument about what, if anything, this court can review in light of plaintiffs' failure to assign error to the granting of defendant's motion for a directed verdict as well as to the denial of their own motion. As best we understand, plaintiffs regard the two motions as two sides of one coin; plaintiffs suggest that, if the trial court erred by denying their motion,

Plaintiffs' first argument is that the escape of the fire onto their field was a trespass for which defendant is strictly liable. In *Hudson v. Peavey Oil Company,* 279 Or 3, 6-7, 566 P2d 175 (1977), the Supreme Court stated "that liability for trespass will not be imposed for an unintentional trespass unless it arises out of defendant's negligence or the carrying on of an extrahazardous activity" (citing *Loe et ux v. Lenhard et al,* 227 Or 242, 362 P2d 312 (1961)). As plaintiffs allege, defendant intentionally lit the fire on his own field. However, it does not follow from that fact that the *resulting trespass* was intentional. *See Lunda v. Matthews,* 46 Or App 701, 705, 613 P2d 63 (1980). For reasons previously noted, there is no question of negligence in this case. Accordingly, under the test of *Hudson* and *Loe,* defendant cannot be liable for trespass unless his activity was ultrahazardous.

In *Loe et ux v. Lenhard et al, supra,* the Supreme Court stated that "it is the duty of the court to decide as a matter of law whether a given activity, in a given factual setting, is or is not extra hazardous." 227 Or at 249.[4] The test the courts are to apply in determining whether an activity is ultrahazardous has been variously defined. In *McLane v. Northwest Natural Gas,* 255 Or 324, 467 P2d 635 (1970), the court stated:

> "* * * We have come to the conclusion that when an activity is extraordinary, exceptional, or unusual, considering the locality in which it is carried on; when there is a risk of grave harm from such abnormality; and when the risk cannot be eliminated by the exercise of reasonable care, the activity should be classed as abnormally dangerous. * * *" 255 Or at 328.

In *McLane,* the court expressly rejected language in earlier cases, including *Loe et ux v. Lenhard et al, supra,* which

---

the granting of defendant's motion was error apparent on the record. *See* Rule of Appellate Procedure 7.19. Defendant does not contend that any reviewability limitations arise from plaintiffs not assigning error to the directed verdict for defendant. However, as in a case where there is a general verdict which is not challenged on evidentiary grounds on appeal, all facts and inferences here must be viewed favorably to the party who had the verdict.

[4] The court explained that "to leave the question to the jury would result in a 'wilderness of single instances.'" 227 Or at 250. It is difficult to see why jury decisions would be more prone than court decisions to create an unacceptable level of inconsistency when the court's decision in any case is to be based on "[the] given factual setting."

suggested that the locality in which an activity takes place is not relevant to the determination of whether it is ultrahazardous.

In *Nicolai v. Day,* 264 Or 354, 506 P2d 483 (1973), the court adopted the test of Tentative Draft No. 10 of Restatement (Second) of Torts § 520 (1964), and stated:

"'* * * The factors which are to be considered in determining whether an activity is abnormally dangerous are as follows:

" '(a) WHETHER THE ACTIVITY INVOLVES A HIGH DEGREE OF RISK OF SOME HARM TO THE PERSON, LAND OR CHATTELS OF OTHERS:

" '(b) WHETHER THE GRAVITY OF THE HARM WHICH MAY RESULT FROM IT IS LIKELY TO BE GREAT:

" '(c) WHETHER THE RISK CANNOT BE ELIMINATED BY THE EXERCISE OF REASONABLE CARE:

" '(d) WHETHER THE ACTIVITY IS NOT A MATTER OF COMMON USAGE:

" '(e) WHETHER THE ACTIVITY IS INAPPROPRIATE TO THE PLACE WHERE IT IS CARRIED ON: AND

" '(f) THE VALUE OF THE ACTIVITY TO THE COMMUNITY.' " 264 Or at 358-59.

In *Bella v. Aurora Air, Inc.,* 279 Or 13, 566 P2d 489 (1977), the court said:

"This court has stated that whether an activity is 'ultrahazardous,' or to use the later term, 'abnormally dangerous,' so as to impose liability without negligence, is to be determined not in the abstract but in the locality and circumstances where it is done; and it is to be determined by the court. * * * The terms 'hazard,' 'risk,' or 'danger' are themselves some hazard to clarity, since they combine in a single conclusion the two distinct variables of the probability of the threatened harm, a judgment about facts, and its gravity, which is a value judgment. When the harm threatened by the activity is very serious, even a low probability of its occurrence can suffice to invoke the standard. * * * Likewise, even when the risk only moderately threatens economic activities rather than harm to life, health, or property or environment, * * * the activity may nevertheless be 'abnormally dangerous' if it can be carried on only with a substantially uncontrollable likelihood that the damage will sometimes occur. * * *" (Citations omitted.) 279 Or at 24.

█      Under the criteria the Supreme Court has established, we conclude that the field burning activity carried on by defendant was ultrahazardous, requiring the imposition of strict liability. There was ample evidence, as plaintiffs appear to concede,[5] and we recognize, that field burning is a matter of common practice in and is appropriate to the locality where these events occurred. The activity is an intrinsic part of an agricultural business widely practiced in that locality. The present economic value of the activity to the community has been legislatively recognized. ORS 468.455 provides:

> "In the interest of public health and welfare it is declared to be the public policy of the state to control, reduce and prevent air pollution caused by the practice of open field burning. Recognizing that open field burning is a nontraditional area source of air pollution that is not confined to a single point of emission *and recognizing that limitation or bar of the practice at this time, without having found reasonable and economically feasible alternatives to the practice could seriously impair the public welfare,* the Legislative Assembly declares it to be the public policy of the state to reduce air pollution from open field burning by smoke management and to continue to seek and encourage by research and development reasonable and economically feasible alternatives to the practice of annual open field burning, all consistent with ORS 468.280." (Emphasis added.)

*See Bella v. Aurora Air, Inc., supra,* 279 Or at 24-25 (relating to the relevance of legislative recognition of a hazard to whether an activity is ultrahazardous).

With respect to the risk of harm from the activity, the gravity of the potential harm and the extent to which the risk is controllable by the exercise of reasonable care, the principal evidence was the testimony of the local fire chief. He stated that as many as one out of eight field burning fires escape its intended confines. There was also testimony by other witnesses that occasional escape of fires due to wind factors

---

[5] In his argument in support of his motion for a directed verdict, plaintiffs' attorney stated to the trial court:

"The testimony in this case is abundantly clear from all the witnesses that there was a field fire which was intentionally set to accomplish a legitimate purpose. It is a practice followed by the grass seed farmers for the last thirty to forty years in this valley. * * *"

they generate is unavoidable. However, the fire chief also testified:

"Q. Could you give me an estimate of how many calls the department would answer in an average summer for field fires that had escaped and gotten out?

"A. Well, it isn't as bad now as it has been in the past. I would say probably five to fifteen fires, somewhere in that area would be an average.

"Q. That would be five to fifteen fires per summer?

"A. Yes.

"Q. Now, it's true, isn't it, that there are field fires that get out that your department is not called about in your district?

"A. That's true, yes.

"Q. Why would that be?

"A. Okay. The people have their own fire trucks, better equipped now than they was years ago. They have equipment as good as the fire department has always, almost, and they take care of their own.

"Q. They get to them?

"A. Yes, they usually have a fire truck in the field, and if the fire comes up or starts, they usually get it out."

Defendant's activity clearly has attendant risks. Although the evidence here does not so show, common sense does suggest that the gravity of the harm which may result from field burning *can* be great. In our view field burning is closely analogous to crop dusting. In the landmark case of *Loe et ux v. Lenhard et al, supra,* our Supreme Court imposed strict liability in connection with crop dusting. This decision was followed in *Bella v. Aurora Air Lines, Inc., supra.* Both cases relied upon *Bedell et ux v. Goulter et al,* 199 Or 344, 261 P2d 842 (1953), which applied the rule of strict liability to damages caused by shock waves from non-negligent dynamite blasting.

We can find no logical basis for distinguishing between crop dusting and field burning. Accordingly, we conclude that field burning is an ultrahazardous activity and that defendant was strictly liabile in trespass. We therefore reverse and remand with instructions to enter a judgment in favor of plaintiffs.

Reversed and remanded with instructions to enter a judgment in favor of plaintiffs.

**RICHARDSON, J.,** dissenting.

I disagree with the majority's conclusion that defendant's activity was ultrahazardous. Until the majority opinion reaches its final two paragraphs, its reasoning seems to lead to the opposite conclusion. The majority then suddenly declares that the question in this case is answered by previous decisions holding different activity to be ultrahazardous. In my view, the majority's equation of crop dusting and field burning is a leap of logic and not a sound analogy. More fundamentally, I do not accept the majority's premise that the issue before us can be resolved by analogy rather than analysis.

The majority states no reasons why the aerial spraying activities considered in *Loe et ux v. Lenhard et al,* 227 Or 242, 362 P2d 312 (1961), and *Bella v. Aurora Air, Inc.,* 279 Or 13, 566 P2d 489 (1977), were so similar to this defendant's activity that it is unnecessary to make an *independent* assessment of whether the field burning here was ultrahazardous under the tests articulated in *Bella v. Aurora Air, Inc., supra, Nicolai v. Day,* 264 Or 354, 506 P2d 483 (1973), and *McLane v. Northwest Natural Gas,* 255 Or 324, 467 P2d 635 (1970).

Although there are similarities between the two activities, there are material differences which are significant in the ultrahazardousness analysis. The principal similarity is that both are recognized agricultural activities designed to increase crop yields. Both involve risks of harm if the elements of the practice escape the bounds of the intended application. However, the differences are more significant than the similarities in applying the Supreme Court's tests as set out in the majority opinion.

As the court noted in *Lenhard,*

"* * * the damage which resulted [from aerial spraying] was within the scope of the risk that droplets of spray cast into the air could, *and probably would,* drift onto the adjoining field. * * *" 227 Or at 254. (Emphasis added.)

That is a recognition of the fact that once the spray is released from the aircraft, it is beyond the control of the pilot or landowner. Consequently, the risk that a spray will escape its intended application is substantial. Conversely, as the

evidence here indicates, the risk that a fire intentionally lighted will escape from the field being burned is substantially reduced by ordinary precautions. Defendant followed the common practice of plowing a strip of land around the perimeters of his field and wetting down the fence line between his property and adjoining farm lands. In addition he enlisted the aid of a number of persons with fire fighting equipment to help contain the fire and extinguish any unintended blaze. The common precautions of the kind taken by defendant substantially reduce the risk that field burning fires will escape onto adjoining property. Whether an activity which is alleged to be ultrahazardous can be controlled by ordinary or extraordinary precautions is part of the relevant analysis. As the Supreme Court observed in *Lenhard:*

"* * * [T]he activity was one capable of inflicting damage upon neighboring crops *notwithstanding the exercise of the utmost care by the applicator. * * *"* 227 Or at 254. (Emphasis added.)

Aerial spraying is an ultrahazardous activity in part because there is a substantial risk that the spray will stray to neighboring property despite the exercise of the utmost care.

As indicated in the fire chief's testimony relied on by the majority, the use of fire control equipment not only reduces the likelihood of the fire escaping but also decreases the likelihood of *grave* harm in the event of escape. The use of these techniques makes a quick response to escaped fires possible; conversely, the grave harm to neighboring crops from aerial spraying described in *Lenhard* and *Bella* was sustained on contact, and the damage was immediate and inevitable.

The express basis for the holding of ultrahazardousness in *Bella* was that the particular spray chemical had been legislatively declared to be dangerous. 279 Or at 24-25. Similarly, in *Lenhard,* the court stated that "[t]he high degree of danger inherent in the spraying of agricultural chemicals by aircraft has been the subject matter of considerable legislative attention." 227 Or at 252. By contrast, open field burning has been declared to be a pollution source, but it has not been legislatively declared to be an extreme fire hazard to persons or property. And, as the majority notes, ORS 468.455 embodies a legislative recognition of the present economic necessity of the practice of field burning.

The differences between aerial spraying and field burning show that the majority's attempt to decide whether the latter is ultrahazardous by a simple parity of reasoning with the cases holding the former to be ultrahazardous does not work. The differences between the activities also demonstrate that field burning survives the Supreme Court's specific tests for determining ultrahazardousness, while aerial spraying fails those tests. In properly conducted field burning operations, as compared with aerial spraying, the degree of risk of *any* harm is less, the potential harm is less likely to be grave, and the possibility that harm can be eliminated or reduced by the exercise of reasonable care is substantially higher. Moreover, the value of field burning to the communities where it is practiced has been legislatively recognized; by contrast, according to *Bella* and *Lenhard,* the legislation relevant to the aerial spraying activities in question there consisted of statutes declaring that the activities created a danger of the kind of harm which gave rise to those actions.

Because the majority rests its decision solely on the putative analogy between field burning and a different activity, it fails to apply to field burning the tests the Supreme Court has established for determining ultrahazardousness. For the stated reasons, the conclusion that field burning is not ultrahazardous under those tests is strongly supported by analyzing the differences between field burning and the activity to which the majority mistakenly equates it.

The majority's decision-by-analogy approach also causes it to overlook the legal significance of certain relevant facts it recites. The majority states that

"* * * field burning is a matter of common practice in and is appropriate to the locality where these events occurred. The activity is an intrinsic part of an agricultural business widely practiced in that locality. The present economic value of the activity to the community has been legislatively recognized. * * *" 55 Or App at 17.

As the majority also notes, at 55 Or App 15, the Supreme Court emphasized in *McLane v. Northwest Natural Gas, supra,* that whether an activity is ultrahazardous must be considered in light of "the locality in which it is carried on." 255 Or at 328. In so holding, the court expressly repudiated language indicating that locality is not relevant to the determination of ultrahazardousness in *Lenhard* and in a second case on which

the majority relies, *Bedell et ux v. Goulter et al,* 199 Or 344, 261 P2d 842 (1953).

I can find no basis in this record for concluding that defendant's activity was ultrahazardous under the six-factor test adopted by the court in *Nicolai v. Day, supra,* or under the alternatively-worded tests of *Bella v. Aurora Air, Inc., supra,* and *McLane v. Northwest Natural Gas, supra.* Neither does the majority.

I also disagree with the majority's decision for another reason. The majority states:

"The evidence was strong that the fire on defendant's property was the source of the fire on plaintiffs' land. It is not clear to us, however, that the evidence was such that the causation question should have been taken from the jury. Because defendant does not argue that the trial court's denial of plaintiffs' motion for a directed verdict should be affirmed, without more, on the ground that causation was a jury question, we do not address that issue." 55 Or App 14, n 1.

The issue in this case is whether plaintiffs' motion for a directed verdict was properly denied. We are required to uphold the denial of the directed verdict if there is any basis to support the trial court's ruling. If there was a jury question as to whether the fire on defendant's field was the cause of the fire on plaintiffs' land, it was not error to deny the motion. The fire took place on a hot summer day in the vicinity of a freeway. None of the witnesses had actual knowledge that the fire moved from one field to the next, although most of the witnesses *assumed* that that occurred. In my view, the evidence of causation was not such that the issue should have been taken from the jury.

I respectfully dissent.

Warden and Van Hoomissen, JJ., join in this dissent.