Argued and submitted January 18, reversed and
remanded with instructions August 4, 1982

In the Matter of the Marriage of

KACHATURIAN,
*Respondent,*
*and*
KACHATURIAN,
*Appellant.*

(No. 120,734, CA A21846)

648 P2d 1313

Paul T. Lipscomb, Salem, argued the cause for appellant. With him on the brief were John W. Jensen, and Blair, MacDonald, Jensen & Lipscomb, Salem.

Terry K. Haenny, Salem, waived appearance for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Wife appeals from an order denying her motion to set aside a dissolution decree taken by default. Former ORS 18.160.[1] The issue is whether the trial court abused its discretion in denying the motion. We conclude that it did. We therefore reverse and remand with instructions to set aside the decree.

The parties were married in 1969. Early in 1980, wife was hospitalized for a period of about two months for psychiatric problems. In July, 1980, husband filed a petition to dissolve the marriage. Wife retained an attorney in August, 1980. For the next several weeks, the attorneys tried unsuccessfully to negotiate a property settlement agreement. In October, wife was again hospitalized for psychiatric problems.

On October 22, wife's attorney wrote husband's attorney expressing concern about her competency. He also asked that husband's attorney prepare a property settlement agreement that he would then present to wife and that:

"If * * * she does not appear to be in the mental or emotional state such that she can appropriately consider the matter, I will probably take some steps to postpone the matter indefinitely. On the other hand, if she is in a mental and emotional state such that she can consider the case and if she does wish to enter into the property settlement agreement, we will do so * * *."

Husband's attorney prepared and forwarded a proposed property settlement agreement. Wife returned home from the hospital sometime in November.

On December 11, wife's attorney again wrote husband's attorney:

" * * * At the present time, I am at a loss to know how to proceed in this case. It has been approximately five or six weeks since I last heard from my client. At that time,

---

[1] Former ORS 18.160 (repealed by Or Laws 1981, ch 898, § 53) provided:

"The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

she was in a hospital in Portland suffering from mental and emotional problems. I wrote to her on November 19, 1980, and advised her that I had the Property Settlement Agreement. I requested that she contact me immediately. I have heard nothing. I have attempted to contact her by telephone and have been unsuccessful. I am sure that your client has more insight into this case really at the present time than I do. If this lady is in the hospital, I don't feel that either of us can really proceed in the case. Certainly, it would not be appropriate for me to file a response and pursue the case if my client is not mentally capable of assisting in the prosecution. I would request that you talk with your client and find out as best you can, this lady's present medical state. If he has contact with her, please ask him to have her call me." [2]

On December 15, husband's attorney replied:

"Thanks for your letter of December 11, 1980. I do understand your plight.

"My concern would be that if we do not get this on the calendar at some point in time so that there is at least an initial target date, we will never get it at issue. Because of her condition I am quite sure that [attorney Haenny] will end up finishing the case. *I can assure you, for the office, however, that whatever continuances are needed because of her condition will not be opposed by us.* In that way, there would at least be a date to hope to resolve this by and that date, as we know from the present docket problems, will initially be some distance in the future.

"There is so little left to resolve I would like to get that date set as a target and the only way I know of is for a Response to be filed.

"*Again, I can and will represent that this office will not force a resolution so long as she is not in any condition to take part in resolving the matter.*" (Emphasis added.)

On December 20, husband's attorney again wrote wife's attorney:

"Mr. Kachaturian does wish to keep this matter moving so that it can finally be resolved. In that regard, it would appear that he has no alternative but to take the position that if no response to [sic] filed by her within thirty days then he is going to request that [attorney Haenny] proceed to take a default in the matter.

---

[2] On December 11, wife was living with husband in the family home.

*"Our letter of December 15, 1980, would, of course, continue to be in effect* and [attorney Haenny] will be following up on this." (Emphasis added.)

Early in January, 1981, facing more mental and emotional problems, wife went to live with her sister in Newport rather than return to the hospital. At the hearing, husband acknowledged that wife "seemed to be under a lot of stress" at the time. In March, wife moved to Albany, where she stayed with another sister. Wife did not advise her attorney when she moved to Newport and Albany, and he continued to send letters to her at the family home.

On January 5, wife's attorney wrote her that it was imperative that she either sign the property settlement agreement or that she send him the filing fee so that he could file a response. Additionally, he wrote:

"You must do one of these two things and you must do it within the next ten days. *If I do not hear from you at the end of ten days, I am going to withdraw as your attorney.* At that time, your husband will take a default and you will probably be barred from pursuing this matter any further. * * *" (Emphasis added.)

Receiving no response, wife's attorney wrote again on January 20:

" * * * * *

"Although I do not feel that you are mentally and emotionally capable of understanding the significance of what is developing in this case, I nevertheless cannot continue to represent you. *This is to advise you that I am hereby withdrawing as your attorney effective immediately.* At this time, you are not represented and your husband's attorney can take a default judgment against you. * * * I strongly suggest that you immediately contact an attorney to represent you. Your rights may be very seriously jeopardized by not doing so." (Emphasis added.)

A copy of that letter was mailed to husband's attorney with the following notation:

"cc: Terry Haenny — I have no choice but to withdraw in this case. I do not feel that Ellen Kachaturian is mentally and emotionally capable of understanding the significance of the case and what's happening. As you know, she has had several mental breakdowns and I believe

that she is presently suffering from sufficient mental disability that any default would probably be set aside in the future."

At the hearing, wife testified that she did not receive the January 5 and January 20 letters from her attorney. Husband testified that he put wife's mail in a drawer at home. Both parties testified that they had been in communication during the period from January to March, 1981. Husband was aware at all times of wife's whereabouts. A default order was entered on February 13, and on March 9, husband presented a prima facie case entitling him to a decree.

Wife testified that she assumed that her attorney was taking care of her case and that she only learned that he had withdrawn and that the matter was over during a telephone conversation with husband in late March, after she moved to Albany. She immediately contacted her former attorney, who agreed to assist her in finding a new attorney. Husband testified that he had not told wife that he was going to court in March to finalize the decree. Husband also notified his attorney that wife intended to move to set aside the default. On March 26, husband's attorney wrote wife's former attorney:

" * * * I understand that you intend to move to set aside the default, although we have yet to receive any pleadings.

"I would ask that you file your motion just as soon as possible. It is the position of my client that the decree should be signed in its present form and we will have to have Judge Norblad decide the issue."

Wife retained her present attorney on April 2. On April 3, he received a copy of a letter from husband's attorney to the trial judge acknowledging that:

" * * * * *

"[Wife's former attorney] called my office on March 20, 1981 to learn the status of the file as I believe [wife] had recontacted him. My office advised him we had taken a default and the decree was with you for signing. [He] *asked that [the decree] not be signed while a decision was made about what to do.*

" * * * * *

" * * * I request * * * that the decree be signed, barring any formal motion being on file *or any formal contact by another lawyer.*" (Emphasis added.)

On April 3, wife's attorney hand-delivered a letter to the trial judge informing him that he had prepared a motion to set aside the default and asking that the decree not be signed pending argument on that motion. For a reason not disclosed by the record, the court signed the decree the same day.[3]

On April 8, wife moved to set the decree aside on the grounds of mistake, inadvertence and excusable neglect. Former ORS 18.160. In her affidavit, she alleged that (1) during the relevant period she was suffering from "mental problems including depression," (2) her attorney had withdrawn from the case without her knowledge, (3) she did not know that a default had been taken, (4) during most of the relevant period, she had been living with husband in the family home and he had not told her that he was going to take a default against her, and (5) the decree was not "fair and equitable."

At the hearing, husband's attorney argued that wife "didn't want to deal with a divorce" and that "she stuck her head in the sand." The trial judge said:

"* * * I can see that he got most of the personal property. He got the better deal on the real property and that he's in charge of the kids and the debts and she's paying no support.

" * * * * *

"There's no doubt in my mind that this lady's [sic] put her head in the sand and didn't want to face reality or face realizations [sic].

"I think the real question here is was this caused by any significant emotional or mental problem. The fact of a voluntary placement in a hospital in and of itself is not any evidence that it was a significant emotional problem. And the only testimony we have is [wife's former attorney] saying that he was concerned about her and of course that is basic non-expertise testimony.

"Therefore, I'll deny [he motion] to set it aside."

■ ■ A motion to set aside an order of default under former ORS 18.160 is addressed to the sound discretion of the trial court. The defaulted party must demonstrate that

---

[3] The record does not disclose whether the trial judge signed the decree before or after he received the letters from the parties' attorneys.

relief from the default was sought with reasonable diligence, and a claim of a meritorious defense must be tendered. Also, lack of prejudice to the party who obtained the default is a relevant, even if not a compelling, circumstance. *See, e.g., Carmichael v. Carmichael,* 101 Or 172, 179, 199 P 385 (1921) (husband had remarried). The statute is to be construed liberally and should be applied with more favor to a defaulted defendant than to a plaintiff, to the end that the rights of the parties may be determined on the merits of the controversy.[4]

Wife's former attorney testified that the decree did not conform to the property settlement agreement prepared by husband's attorney.[5] The decree terminated a marriage of 12 years and awarded joint custody of the parties' three minor children with husband to have actual physical custody, subject to reasonable visitation by wife. It also a- warded husband the bulk of the personal property, including four automobiles, a camper and the family home. Wife received some personal property and a non-interest-bearing judgment payable when the home is sold or when the youngest child reaches 18, *i.e.,* 1984. The decree is silent on spousal support.

■ ■ Wife sought relief from the default with reasonable diligence. She filed a response.[6] In her affidavit, she alleged substantial issues to be decided. Husband has not claimed that he will be prejudiced if the decree is set aside and the suit is tried on its merits. We conclude that wife has shown sufficient grounds under former ORS 18.160 to set aside the decree and that the denial of wife's motion was an abuse of discretion.

Reversed and remanded with instructions to set aside the decree. Costs to appellant.

---

[4] *Litton and Char-Ole' Ranch, Inc.,* 281 Or 687, 576 P2d 369 (1978); *Hiatt v. Congoleum Industries,* 279 Or 569, 569 P2d 567 (1977); *Bella v. Aurora Air, Inc.,* 279 Or 13, 566 P2d 489 (1977); *Wagar v. Prudential Ins. Co.,* 276 Or 827, 556 P2d 658 (1976); *Becker v. Becker,* 271 Or 708, 533 P2d 1367 (1975).

[5] The property settlement agreement was not offered in evidence.

[6] The requirement of presenting a meritorious defense does not turn on the form of the tendered motion or pleading; its object is that the trial court satisfy itself that there are in fact substantial issues to be decided before allowing a party to reopen a defaulted case. *Bella v. Aurora Air, Inc.,* 279 Or 13, 17-18, 566 P2d 489 (1977). We conclude that there are such issues in this case.