No. 57,013

BILL ERNEST, *Plaintiff-Appellant*, v. ROBERT D. FALER d/b/a BOB FALER AERIAL SPRAY SERVICE, *Defendant-Appellee.*

(697 P.2d 870)

Opinion filed April 5, 1985.

M. *Doug Bell*, of Becker, Hildreth, Eastman, Gossard, Bell and Hassenplug, of Coffeyville, argued the cause and was on the brief for appellant.

*Robert K. Scovel*, of Scovel, Emert, Heasty & Oakleaf, of Independence, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action to recover damages resulting from alleged negligence in the application of a chemical pesticide by an aerial sprayer, the defendant-appellee, Robert D. Faler, who operates Bob Faler Aerial Spray Service. On June 4, 1982, the defendant sprayed a pesticide on real property adjacent to the property of the plaintiff, Bill Ernest, in Montgomery County. In his petition, plaintiff alleged that some of the chemical spray drifted over to plaintiff's real estate and caused damage to growing walnut trees in an amount in excess of $7500.

Plaintiff, having noticed the damage to his trees, promptly notified the Kansas Secretary of Agriculture, the defendant as pesticide applicator, and the adjoining landowner. The Kansas Department of Agriculture examined the property and took soil samples. The department's report, which was filed on June 10, 1982, showed that the chemical 2, 4-D, a pesticide, was present

on plaintiff's trees. On November 1, 1983, the plaintiff filed an action against defendant to recover damages for negligent spraying.

The defendant filed a motion for summary judgment based upon the failure of the plaintiff to comply with the provisions of K.S.A. 2-2457, which provides as follows:

2-2457. **Action for damages; filing of statement; limitations.** In order to maintain a civil action, a person damaged from pesticide application shall have filed with the county attorney of the county in which the damage occurred, a written statement, on a form prescribed by the secretary, claiming that he or she has been damaged. Such form shall be filed within sixty (60) days after the date damage was discovered. Such statement shall contain, but shall not be limited to, the name of the person responsible for the application of said pesticide and/or the name of the owner or lessee of the land on which it is alleged that the damage occurred. The secretary shall prepare a form to be furnished to persons for use in such cases and such forms shall contain such other requirements as the secretary may deem proper. A duplicate copy of this statement shall be sent by the county attorney to the secretary. The county attorney, upon receipt of such statement shall notify the licensee and the owner or lessee of the land or other person who may be charged with the responsibility and furnish copies of such statements as may be requested. Nothing contained in the provisions of this section shall be deemed to require any county attorney to maintain a civil action for any person."

The district court sustained defendant's motion for summary judgment on the basis that plaintiff had failed to comply with K.S.A. 2-2457 by neglecting to file with the county attorney the written statement of damages on a form prescribed by the office of the secretary of agriculture. The trial court held that the notice required by K.S.A. 2-2457 was a condition precedent to the filing of an action for recovery of damages for negligence against a sprayer of pesticides, and that, although plaintiff had notified the secretary of agriculture, the sprayer, and also the adjacent landowner within the sixty-day period, that was not a sufficient compliance to satisfy the statute. In entering summary judgment, the trial court stated for the record that it felt the result was extremely unfair and that it hoped the summary judgment would be reversed on appeal. Specifically, the trial court indicated that the application of the statute had the effect of taking a property right away from plaintiff without giving him the opportunity to have his day in court. The plaintiff then appealed, and the appeal was transferred to the Supreme Court.

On appeal, plaintiff contends that he had substantially complied with K.S.A. 2-2457 by giving notice to the secretary of

agriculture, the pesticide applicator, and the owner of the adjacent property within the sixty-day period and, further, that the defendant by its actions had waived notice to the county attorney and was estopped from setting up the defense of the statute. Plaintiff further maintains that the trial court erred in ruling that K.S.A. 2-2457 does not violate the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution and the Kansas Bill of Rights.

In view of the importance of the constitutional issues raised, we will determine this case on the point raised by the plaintiff that the provisions of K.S.A. 2-2457 are void and unenforceable as a violation of the due process and the equal protection clauses of the United States and Kansas Constitutions. In determining this issue, it would be helpful at the outset to consider some of the basic principles of law applicable in this area and also to bring into sharper focus the Kansas Pesticide Law (K.S.A. 2-2438a *et seq.*).

The legal responsibility of one who engages in the business of aerial crop-spraying was determined in *Binder v. Perkins*, 213 Kan. 365, 516 P.2d 1012 (1973), where we held that one who is engaged in the business of aerial crop-spraying has an obligation to use reasonable care to prevent injury to others. Reasonable precautions required vary with the hazards of the business; the greater the risk, the more imperative the obligation. There is a comprehensive annotation on the subject of liability for injury caused by spraying or dusting of crops at 37 A.L.R.3d 833. The annotation points out that after World War II there was a significant growth in the crop-dusting industry and that crop-dusting today has become a most valuable weapon in the farmer's arsenal against crop-killing pests. The problem, however, has been that the same chemicals which have destroyed the weeds or insects of a landowner frequently have been deadly to the crops of his neighbors. Furthermore, it is extremely difficult, if not altogether impossible, to prevent aerially applied chemicals from drifting onto neighboring land because of the atmospheric forces, the minute size of the dust or spray particles, and the air disturbances created by the aircraft itself. Some of the courts have adopted the view that crop-dusting is so inherently and intrinsically dangerous as to make the owner of property who hires a sprayer liable for the sprayer's negligence. Other courts have

adopted the position that the person who applies the spray or dust to the crops may be liable for resulting damages on a theory of negligence, trespass, or strict liability. There are many cases cited in the annotation illustrating the application of these various theories. As noted above, in *Binder* this court applied the rule that an aerial sprayer of crops is liable for negligence, if he fails to take reasonable precautions to avoid injuries to others.

In the late 1940s and early 1950s, there developed a great national interest in the area of environmental protection. The question of insecticide use became a matter of great interest to the President, the Congress, and the states. Many state statutes were enacted governing the spraying and application of pesticides, herbicides, and insecticides. In 1953, Kansas enacted the Termite and Pest Control Act (G.S. 1949, 2-2401 *et seq.* [1953 Supp.]). Subsequently, as amended, this became the Pest Control Act (K.S.A. 2-2401 *et seq.* [Weeks]). This act provided for the licensing and regulation of pest control operators by the adoption of rules and regulations by the Kansas Board of Agriculture, including provisions for the suspension and renewal of licenses, and the controlled use of pest control chemicals. The Pest Control Act was supplemented by the 1970 enactment of the Pesticide Use Law, K.S.A. 2-2413 *et seq.* (Weeks). K.S.A. 2-2424 (Weeks) provided that in a *criminal* action, a person damaged from pesticide application shall file with the county attorney a written statement claiming that he or she has been damaged, on a form prescribed and provided by the secretary of agriculture, within sixty days after the date the damage occurred, or prior to the time that 25% of a damaged crop shall have been harvested. The county attorney, upon receipt of this statement, was required to notify the licensee and the owner or lessee of the land or other person who may be charged with the responsibility and furnish copies of the statement. It is important to note that the sixty-day notice provision applied only in a *criminal* action and had no application to *civil* actions.

During the middle 1970s, various federal regulations in the area of pesticides were promulgated, and statutory revisions were adopted in many states. A new Kansas pesticide law was enacted in 1976. The new statute was similar to the former statute and included provisions for the licensing of commercial and private pesticide applicators. The law proscribed certain

unlawful acts in the application of pesticides, provisions for enforcement of the act, and regulations of the secretary of agriculture. The 1976 legislature included in the act K.S.A. 2-2457, which is involved in this case and which is quoted in full above. This statute is based in part upon the language of the former statute, K.S.A. 2-2424 (Weeks), with one important difference: Whereas K.S.A. 2-2424 (Weeks) applied only to *criminal* actions, the new statute, K.S.A. 2-2457, applied only to *civil* actions and, in effect, made the filing of the written statement with the county attorney by an injured person within sixty days after the date the damage from pesticide application was discovered a condition precedent to the right to bring a civil action against the applicator.

The plaintiff challenges the constitutionality of K.S.A. 2-2457 on the basis that it results in a denial of due process of law and equal protection of the law. In order to properly resolve these issues, it is necessary to understand the distinction between the constitutional concept of due process of law and that of equal protection of the law. In *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 576 P.2d 221 (1978), Justice Owsley explained the difference in the concepts by the following quotation from *Ross v. Moffitt*, 417 U.S. 600, 41 L.Ed.2d 341, 94 S.Ct. 2437 (1974):

" '. . ."Due process" emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. "Equal protection," on the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable.' "

The test for due process is stated to be whether the legislative means selected has a real and substantial relation to the objective sought. The rule has been restated in terms of whether the regulation is reasonable in relation to its subject and is adopted in the interest of the community. When considering the question whether a statute offends the equal protection clause, traditionally, the yardstick for measuring equal protection arguments has been the "reasonable basis" test. Under this test, the constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. A more stringent test has emerged, however, in cases involving "suspect classifications" or "fundamental interests." Under this test, the courts peel away the protective presumption of constitutionality and adopt an attitude of active and critical

analysis, subjecting the classification to strict scrutiny. The "strict scrutiny" test requires the court to consider the nature of the rights affected by the legislation, the classification established, and the governmental interest necessitating the classification.

In *Henry v. Bauder*, 213 Kan. 751, 518 P.2d 362 (1974), it was held that under federal and Kansas equal protection constitutional provisions, a state statute may single out a class of persons for distinctive treatment only if the classification bears a rational relation to the purpose of the legislation. The constitutional principle of equal protection does not preclude the state from drawing distinctions between different groups of individuals, but does require that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. In *Henry*, it was held that the former guest statute, K.S.A. 8-122b (Corrick), was unconstitutional and void as a denial of equal protection of the law under the Fourteenth Amendment to the United States Constitution and Sections 1 and 2 of the Kansas Bill of Rights for the reason that the classifications provided in that statute were arbitrary and discriminatory and had no rational basis.

The same basic rule was recognized in *Little v. Smith*, 124 Kan. 237, 241, 257 Pac. 959 (1927), where the court states that a statute restraining the liberties and property rights of citizens cannot be upheld unless it has a real relation to its object and the regulation is reasonably adapted to accomplish the end sought to be attained. For a statute to be a proper exercise of the police power, it must be reasonable in its operation upon the person whom it affects, must not be for the annoyance of a particular class, and must not be unduly oppressive, discriminatory, capricious, whimsical, or arbitrary. 16A Am. Jur. 2d, Constitutional Law § 384, pp. 70-71. Stated in a rather blunt manner, the legislature cannot use a cannon to kill a cockroach. It is difficult, if not impossible, to lay down an all-embracing test of reasonableness by which the great variety of situations impelling legislative regulation can be measured. What constitutes a reasonable interference with private property by the exercise of the police power is a matter for which there is no certain test, but one which rests in human judgment, natural justice, and common sense. Whether or not a restriction is reasonable may depend on

many factors, no single factor being ordinarily decisive. 16A Am. Jur. 2d, Constitutional Law § 385, p. 72, and cases cited therein.

"Reasonableness" was defined by one court as what, from the calm sea level of common sense applied to the total situation, is not illegitimate in view of the end attained. *In re Hall*, 50 Cal. App. 786, 790, 195 Pac. 975 (1920).

The right of the plaintiff involved in this case is the fundamental constitutional right to have a remedy for an injury to person or property by due course of law. This right is recognized in the Kansas Bill of Rights § 18, which provides that all persons, for injuries suffered in person, reputation or property, shall have a remedy by due course of law, and justice administered without delay. In 1904, the term, "remedy by due course of law," was defined in *Hanson v. Krehbiel*, 68 Kan. 670, 75 Pac. 1041 (1904), as follows:

" 'Remedy by due course of law,' as used in section 18 of the bill of rights, means the reparation for injury, ordered by a tribunal having jurisdiction, in due course of procedure and after a fair hearing." Syl. ¶ 2.

*Hanson* involved a statute passed by the 1901 legislature which limited the right of recovery in libel cases to actual damages where, after service of a notice, the publisher of the newspaper made a full and fair retraction, coupled with a showing upon the trial that it was published in good faith, under a misapprehension of the facts. The only damages which could be recovered were those suffered with respect to the plaintiff's property, business, trade, profession, or occupation. There could be no recovery for injury arising from a libeled person's injured feelings, mental suffering and anguish, and personal and public humiliation, consequent upon the malicious publication of the false and libelous matter. The court pointed out that the effect of the statute was to deny a remedy for some of the injuries suffered by a person as the result of the libel. The court held that the effect of the statute was to deny to the injured plaintiff a remedy by due course of law and, therefore, it was unconstitutional.

In *Noel v. Menninger Foundation*, 175 Kan. 751, 267 P.2d 934 (1954), it was held that the doctrine of immunity of charitable corporations was in violation of § 18 of the Kansas Bill of Rights as a denial of a remedy by due course of law. The court stated that the constitutional provisions guaranteeing to every person a remedy by due course of law for injury done him in person or

property means that for such wrongs that are recognized by the law of the land the court shall be open and afford a remedy. It is stated that the primary duty of the courts is to safeguard the declaration of right and remedy guaranteed by the constitutional provision insuring a remedy for all injuries. Subsequent to *Noel*, the legislature enacted a statute which denied to a judgment creditor the right to utilize garnishment and postjudgment procedures to collect judgments against charitable corporations, including hospitals. The constitutionality of this statute was challenged in *Neely v. St. Francis Hospital & School of Nursing*, 192 Kan. 716, 391 P.2d 155 (1964), on the basis that it violated due process by denying a remedy by due course of law. This court held the statute unconstitutional as an attempt to water down or dilute the definition of remedy. The court adhered to the language in *Noel v. Menninger Foundation*, stating, " 'It is the primary duty of the courts to safeguard the declaration of right and remedy guaranteed by the constitutional provision insuring a remedy for all injuries.' " 192 Kan. at 722-23. From these cases, it is clear that the right of a person injured by the tortious act of another to a remedy for his injuries is one of the basic constitutional rights guaranteed protection by the Kansas courts.

K.S.A. 2-2457 is a type of statute generally described as a *notice of claim provision*. Notice of claim provisions generally are made applicable to state agencies, municipalities, and other political subdivisions and require as a condition precedent to the initiation of a lawsuit against the governmental unit that notice of all tort claims be delivered to a designated public official within a designated period of time. Since the time periods within which such notice must be filed are quite short, these provisions operate much like abbreviated statutes of limitations.

It has been stated that the origins and underlying purpose of notice of claim provisions are rooted in the doctrine of sovereign immunity. The various cases on the subject seem to conclude that the purpose or objective of notice of claim provisions falls within four general categories:

(1) Notice of claim provisions enable the governmental agency to investigate promptly the incident giving rise to the claim, thereby facilitating an immediate assessment of potential liability;

(2) Notice of claim provisions protect against the cost of unnecessary litigation by increasing the likelihood of out-of-court settlements;

(3) Early notice of accidents serves to prevent future accidents by enabling the governmental unit to make any necessary repairs or remedies as quickly as possible; and

(4) Advance notice of possible liability aids public entities in determining their future taxes and in planning their fiscal budgets.

It is important to note the emphasis appears to be on the protection of the public coffers, with perhaps an ancillary concern for public safety. Note, *Notice of Claim Provisions: An Equal Protection Perspective*, 60 Cornell L. Rev. 417, 423 (1975).

In upholding notice of claim provisions applicable to governmental subdivisions, the courts have usually done so on the basis that the liability of a governmental body is one created by statute and, hence, the state can set conditions on any cause of action so created. Notice of claim statutes have been upheld in Kansas upon this basis.

In *Bohrer v. State Highway Comm.*, 137 Kan. 925, 22 P.2d 470 (1933), plaintiff brought an action against the State Highway Commission for wrongful death caused by defects in a state highway. The statute, R.S. 1923, 68-419 (1931 Supp.), provided that no action could be maintained against the State Highway Commission for highway defects unless, within ninety days after sustaining the damage, a written notice was served on the director of highways. It was held in *Bohrer* that the notice of claim provision was a condition precedent to the maintenance of the action. The court noted as follows:

"It is a liability created by statute. The state, originally being immune from such liability, can be sued only for the cause and under the circumstances and within the time provided by statute." 137 Kan. at 926.

This rationale has usually been used by the courts of other jurisdictions in upholding the constitutionality of notice of claims provisions. They have been sustained as valid enactments in cases involving claims growing out of torts, on the ground that the liability of a municipal corporation for tortious claims is only statutory in its origin and the legislature may attach such conditions to the right to recover from the municipal corporation for

the tort as it deems proper or expedient. 56 Am. Jur. 2d, Municipal Corporations, etc., § 681, p. 726.

The purpose of a notice of claims provision was discussed in *Cook v. Topeka,* 75 Kan. 534, 536, 90 Pac. 244 (1907), where the court stated:

> "The object of filing this statement is to inform the city of the accident, and the place in the street where it occurred, [so] that the city may remove the obstruction from the street or alley or mend the place causing the accident, and also to give the city an opportunity to ascertain the extent of the complainant's injuries and the incidents attending the happening of the accident while the occurrence is fresh in the minds of those who possess information on the subject."

See also *Cornett v. City of Neodesha,* 187 Kan. 60, 63, 353 P.2d 975 (1960).

With these general principles in mind, we turn now to an examination of K.S.A. 2-2457 to determine whether it violates the due process and equal protection provisions of the United States and Kansas Constitutions. To determine this issue, we must balance the relevant and conflicting factors to determine whether the legislative means selected has a real and relevant relation to the objective sought. We recognize, of course, that a state legislature has a broad discretion in adopting statutes to achieve some legislative objective. We have concluded, however, that K.S.A. 2-2457 is unreasonable, not only as a denial of a remedy by due process of law but also as a denial of equal protection of the law.

The statute now before us, in our judgment, creates an unreasonable barrier and impediment to a civil remedy which simply is not fair and reasonable under the circumstances. In reaching this conclusion, we have considered the following factors. In the first place, the requirement that an injured person file a statement with the *county attorney* within sixty days after the date the pesticide damage is discovered does little, if anything, to achieve the legislative purpose. We certainly agree with the defendant that the Kansas Pesticide Law was enacted by the legislature in order to protect the public and to regulate pesticide applicators because of the serious consequences that can and have resulted from negligent application. There is certainly an advantage to the public for the applicator and the secretary of agriculture to be promptly notified as soon as possible after pesticide damage has occurred. In this particular case, the plaintiff promptly gave notice to the secretary of agriculture, who

immediately conducted tests on the plaintiff's property and found the presence of a chemical pesticide. But the requirement of serving a notice on the county attorney would seem to us to be a vain and useless act and clearly a trap for the unwary. The statute specifically provides that nothing in the provisions of the section should be deemed to require any county attorney to maintain a civil action for *any* person. A county attorney does not have the scientific equipment or facilities available to run chemical tests. It is the secretary of agriculture who has the equipment and personnel to determine whether or not a pesticide has been improperly applied. Counsel for the defendant has not cited us a single statute in any other state which requires notice to a county attorney or to a public official other than the secretary of agriculture or one in a comparable public position. The statute under the 1970 Pesticide Use Law (K.S.A. 2-2424 [Weeks]) provided for the filing of a report with the county attorney as a condition precedent to the filing of a criminal action. There may well have been a public purpose in providing for such a condition precedent to filing a *criminal* action, but we find no similar purpose or relevancy in requiring a written statement to be filed with the county attorney as a condition precedent to the filing of a *civil* action.

We have also concluded that, although the prompt filing of a notice with the secretary of agriculture or the applicator of the pesticide may help to achieve a legitimate legislative purpose by making it possible to promptly conduct chemical tests and correct dangerous environmental conditions, we do not believe that it is reasonable to deny a remedy in the courts to an injured person or property owner who later files a civil action simply because the statutory notice was not given. In reaching this conclusion, we have considered the legislative history of the Kansas Pesticide Law. We note that, prior to the adoption of the pesticide law in Kansas, a model pesticide bill was developed and proposed by the Council of State Governments which served as a basis for some uniformity in pesticide statutes throughout the country. The model act contained a section providing, in substance, that any person claiming damage from a pesticide application shall file with the state enforcement officer a written statement within sixty days after the date that damage occurred.

In this same section of the model act, it is also specifically provided that:

"The filing of such report or the failure to file such a report need not be alleged in any complaint which might be filed in a court of law, and the failure to file the report shall not be considered any bar to the maintenance of any *criminal* or *civil* action."

Clearly the drafters of the model act did not believe that barring a civil action by an injured person because of a failure to file a notice of claim was a reasonable requirement in order to obtain the objectives of the act.

Various states which adopted pesticide legislation during the middle 1970s specifically provided in the statute for a report of loss resulting from pesticide applications to be made to the secretary of agriculture or a comparable officer or board within a sixty-day period. However, the majority of the states, including Colorado, Missouri, South Dakota, and Iowa, specifically provided that the failure to file a damage statement should not be considered as a bar to the maintenance of a civil action. A minority of the states, including North Dakota, Oregon, and Oklahoma, have enacted statutes providing that failure to file the notice with the agricultural commissioner within the sixty-day period shall bar a civil action for damages. The North Dakota statute (N.D. Cent. C. § 28-01-40 [1983 Supp].) was upheld as constitutional by the North Dakota Supreme Court in *Schroeder Aviation, Inc. v. DeFehr*, 283 N.W.2d 147 (N.D. 1979). The court in upholding the statute reasoned that, since notice of claim requirements pertaining to governmental units have frequently been upheld, a notice of claim requirement in a pesticide case involving a private citizen was constitutional. In an earlier case, the Supreme Court of North Dakota held that the statute had no application at all to property owners who contract for pesticide application services but applied only to injured third persons other than the owner or occupier of the property for whom the pesticide applicator was rendering labor or service. *Christensen v. Midstate Aerial Applicators Corp.*, 166 N.W.2d 386 (N.D. 1969). This result seems not only unreasonable but rather absurd.

In *Short v. Jones*, 613 P.2d 452 (Okla. 1980), the Supreme Court of Oklahoma held that the owner of pecan-bearing trees located on property adjacent to the real estate where a chemical herbicide was applied could recover from the crop-duster, even

though the plaintiff had not filed a timely written statement with the state board of agriculture as required by the Oklahoma law. The court held that the requirement for filing the written statement applied only to "annual crops or plants" and had no application to situations which involved damage to trees. It seems to us that this distinction constitutes an invidious discrimination between property owners similarly situated.

We have also concluded that K.S.A. 2-2457 is unreasonable because it bars a cause of action for civil damage sixty days after the date the damage is discovered, even though the injured party may not know and has no reasonable way of knowing that a pesticide was the *cause* of his injuries. For example, assume a person, temporarily on the property of another as an invitee, is unknowingly exposed to chemicals and develops an illness. Although he knows he is ill, he cannot be required to know that his illness was the result of the application of chemicals several weeks before he visited the premises. For another example, assume that a motel has been sprayed in order to exterminate fleas and cockroaches. The motel is then opened for business, and overnight patrons of the motel come in contact with the chemical pesticide. The next day they drive home to another state and develop an illness from a toxic reaction. Although they may discover that they have suffered an illness, the best medical advice may not be able to inform them that they were poisoned by a toxic chemical pesticide present in a motel where they had chosen to spend the night many weeks earlier. This whole situation smacks of unfairness and unreasonableness.

Many legitimate questions arise in the application of K.S.A. 2-2457. If there is no licensed applicator involved, and a private property owner simply sprays his garden with a lethal chemical, is the sixty-day notice of claim provision applicable to his neighbors? Does the sixty-day notice provision apply when the owner scatters rat poison throughout his building to rid his premises of rats and the poison somehow finds its way into the coffee cup of a business visitor?

There is one other phase of this subject which must be considered. K.S.A. 2-2457 applies only to civil actions where a persons is damaged from a *pesticide* application. The legislature has enacted an entirely separate act governing the regulation of fertilizers. See K.S.A. 2-1201 *et seq.*, where the sale and dis-

tribution of commercial fertilizers is regulated. Custom blenders of fertilizer must be licensed (K.S.A. 2-1201a). Custom blenders are subject to inspection by the secretary of agriculture and his representatives. The board of agriculture is authorized in K.S.A. 2-1212 to make and promulgate regulations for the safe handling, storage and transportation of anhydrous ammonia, and the equipment used in its handling. This act pertaining to fertilizers does not contain a notice of claim provision which bars a civil action where a person is injured either in his person or property by the negligent application of anhydrous ammonia or any other chemical fertilizer. Thus, although a person may suffer personal injury or property damage as the result of the use of a defective chemical fertilizer, he need not report the damage to anyone and his action for damages is not barred in the event a statement is not filed. This situation also smacks of unreasonableness and invidious discrimination as between injured citizens.

To summarize it all, we have examined the reasonableness of the provisions of K.S.A. 2-2457 from the calm sea level of common sense and have considered the total situation. We have concluded that the statute is unreasonable and unfair and does not satisfy the recognized test in that the legislative means selected does not have a real or substantial relation to the objective sought. The statute places an unreasonable impediment and barrier in the path of an injured citizen who seeks his remedy by due course of law. K.S.A. 2-2457 violates constitutional requirements of due process of law and equal protection of the law. In view of our conclusions on this point, we need not consider the other points raised by the plaintiff on the appeal.

We hold that the trial court erred in granting summary judgment in favor of the defendant on the basis that plaintiff's cause of action was barred by his failure to file the statutory notice with the county attorney of Montgomery County as provided for in K.S.A. 2-2457.

The judgment is reversed and the case is remanded to the district court with directions to proceed to consider the merits of the plaintiff's cause of action.