Steven H. **WILLS**, Plaintiff
and Appellant,

v.

**SCHROEDER AVIATION, INC.**, a North
Dakota corporation, Ostlund Chemical
Co., a North Dakota corporation, and
Darrol G. Schroeder, Defendants and
Appellees.

Civ. No. 11106.

Supreme Court of North Dakota.

June 26, 1986.

Ohnstad, Twichell, Breitling, Rosenvold,
Wanner, Nelson, Neugebauer & Maring,
West Fargo, for plaintiff and appellant;
argued by Michael D. Nelson.

Solberg, Stewart, Boulger & Miller, Fargo, for defendants and appellees Schroeder
Aviation, Inc. and Darrol G. Schroeder; argued by Wayne O. Solberg.

Nilles, Hansen, Magill & Davies, Fargo,
for defendant and appellee Ostlund Chemical Co.; argued by Stephen W. Plambeck.

MESCHKE, Justice.

Steven H. Wills appeals from two summary judgments dismissing his action
against Schroeder Aviation, Inc. [Schroeder
Aviation], Ostlund Chemical Co. [Ostlund],
and Darrol G. Schroeder for damages allegedly incurred as a result of the aerial application of a herbicide to Wills' corn crop.
We reverse.

Viewed in the light most favorable to
Wills, the evidence reflects that on June 15,
1984, Wills contacted Schroeder, the president of Schroeder Aviation, which is an
aerial applicator of agricultural chemicals,
about weed problems in a portion of his
corn acreage. That same day, an employee
of Schroeder Aviation aerially applied a
liquid post-emergent herbicide, 2,4–D
Amine "Clean Crop," to 200 of the 240–
acre corn crop. According to Ostlund, the
manufacturer of the herbicide, the chemical
comes attached with a label that cautions
the user that "[w]hen corn is over 8 inches
tall, use drop nozzles to keep spray off
corn foliage." Wills' corn was two to three
feet high when the crop was sprayed.

A thunderstorm struck the area on June
22, 1984. The following day Wills discovered that the 200 acres of corn which had
been aerially sprayed were "devastated,"
and that the 40 contiguous acres of corn
which had not been sprayed "suffered no

damage whatsoever from the thunderstorm." Wills contacted Schroeder, and on June 23, 1984, Schroeder and a representative of Ostlund came to Wills' farm to survey the damage. According to Wills, pictures were taken by Schroeder and the Ostlund representative, who also "removed several corn stalks and took them with him when he left."

With the planting season rapidly drawing to a close, Wills applied to the Cass County ASCS office on June 25, 1984, for permission to disc under the destroyed corn acreage and re-seed the land. Wills received permission, and subsequently disced under the destroyed corn crop and re-seeded the 200 acres with sunflowers.

On August 8, 1984, Wills filed with the North Dakota Agriculture Commissioner a certified report of loss with proofs of personal service pursuant to §§ 28–01–40 and 28–01–41, N.D.C.C.[1] Wills commenced this action against the defendants based on theories of negligence, breach of contract, breach of express and implied warranties, and strict liability in tort. The district court granted the defendants' motions for summary judgment and dismissed the action on the basis that Wills had failed to timely file the verified report of loss with the agriculture commissioner as required by § 28–01–40, N.D.C.C. The district court also granted a separate summary judgment dismissing the individual defendant, Schroeder, from the action because it was "undisputed that plaintiff's dealings were with defendant Schroeder Aviation, Inc. and that defendant Darrol G. Schroeder was at all times, acting on behalf of the corporation, . . ." This appeal followed.

Section 28–01–40, N.D.C.C., provides:

*"28–01–40. Reports of loss through pesticide application required.* No civil action shall be commenced arising out of the use or application of any herbicide, insecticide, fungicide or agricultural chemical by any applicator or operator, unless the claimant has filed a verified report of the loss with the state of North Dakota agriculture commissioner, together with proof of service of such verified report of loss upon the operator or applicator allegedly responsible and, if the claimant is not the person for whom such work was done, then also the person for whom such work was done within a period of sixty days from the occurrence of such loss or within sixty days from the date the claimant knew such loss had occurred, provided, however, *if the damage is alleged to have been occasioned to growing crops, the report shall be filed prior to the time when fifty percent of the crop was harvested."* [Emphasis added.]

Although Wills filed his verified report of loss within 60 days of the occurrence of the loss, the defendants assert, and the district court concluded, that the filing of the report was nevertheless untimely because it occurred after "fifty percent of the crop was harvested." The primary issue in this case is whether Wills' discing under of his damaged corn crop constituted a "harvest" of the crop within the meaning of § 28–01–40, N.D.C.C.

■ Wills relies upon numerous dictionary and judicial definitions of the term "harvest" and asserts that the discing operation in this case cannot conceivably be interpreted to constitute a "harvest" of his corn crop. The defendants contend that the underlying legislative intent of the filing requirement is to allow all parties, as well as the agriculture commissioner, an opportunity to investigate the damaged crop before it is cleared from the land by whatever means. The defendants assert that, because the crop was cleared from the land before all interested parties had an opportunity to investigate, Wills' action is barred.

Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears. Section 1–02–02, N.D.C.C. A statute should be

1. Sections 28–01–40 and 28–01–41, N.D.C.C., were subsequently repealed by the 1985 Legislature. *See* 1985 N.D. Sess.Laws. Ch. 103, § 10.

The reporting requirements are currently codified at §§ 4–35–21.1 and 4–35–21.2, N.D.C.C.

construed so that an ordinary person reading it would get from it the usual, accepted meaning. *O'Neill Production Credit Ass'n v. Schnoor*, 208 Neb. 105, 302 N.W.2d 376, 378 (1981). *See also* § 1–02–02, N.D.C.C. When a statute is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit because the legislative intent is presumed clear from the face of the statute. *See* § 1–02–05, N.D.C.C.; *Milbank Mut. Ins. Co. v. Dairyland Ins. Co.*, 373 N.W.2d 888, 891 (N.D.1985). In *Hughes v. North Dakota Crime Victims Rep.Bd.*, 246 N.W.2d 774, 776 (N.D.1976), this court, in considering the meaning of another statute, stated:

> "It is significant to note that only if a statute is ambiguous are we permitted to explore into the legislative object, the consequences, and the preamble. Hughes' argument rests primarily upon the contention that the object of the Legislature to compensate victims and to promote the efficacy of law enforcement would be thwarted by a strict construction. That may well be, but when the Legislature uses such explicit terms as it did in [the statute], we are not permitted to declare the language ambiguous and apply Section 1–02–39 on the pretext of determining intent."

We cannot say that the term "harvested" is ambiguous. It is a word with a commonly understood meaning. The term "harvest" is commonly defined as "the time of year when matured grain, fruit, vegetables, etc. are reaped and gathered in;" "a season's yield of grain, fruit, etc. when gathered in or ready to be gathered in;" "the gathering in of a crop;" "to gather in (a crop, etc.);" "to gather the crop from (a field)." Webster's New World Dictionary

639 (2nd Coll.Ed.1976). None of the definitions we have reviewed support the defendants' assertion that the discing operation in this case constituted a "harvest" of Wills' corn crop. *E.g.*, *United States v. Watkins*, 147 F.Supp. 786, 790 (E.D.Ark.1957); *People v. Villa*, 144 Cal.App.3d 386, 192 Cal. Rptr. 674, 676 (1983), *Hefley v. Morales*, 197 Colo. 523, 595 P.2d 233, 235 (1979).

Although we need not adhere to the strict letter of a statute if it would lead to an absurd result or to an injustice, *e.g.*, *Loney v. Grass Lake Public Sch. Dist. No. 3*, 322 N.W.2d 470, 472 (N.D.1982), we perceive no "absurd result" or "injustice" in this case by giving the term "harvested" its commonly understood meaning.

Crops damaged by an agricultural chemical are not always rendered incapable of being harvested. A crop damaged by herbicides may nevertheless remain harvestable and result in a lower yield, as was the case in *Eichenberger v. Wilhelm*, 244 N.W.2d 691 (N.D.1976). The Legislature may have determined that, in situations where substantial damage occurs to a crop at a time when replanting is still a viable option, the need for swift action and the duty to mitigate damages override the asserted policy underlying the notice-of-claim provision, and under such circumstances, filing the report of loss within 60 days is sufficient.

Moreover, the defendants are not in a position to claim any "injustice" in this case. According to Wills, Schroeder and an Ostlund representative visited the farm at his behest and observed the damaged corn crop prior to the discing operation. The defendants were thereby afforded the opportunity of inspecting the crop for the possible cause of damage.[2] The defend-

---

**2.** Wills asserts in an affidavit that pictures of the damaged corn were taken by Schroeder and the Ostlund representative, and that the Ostlund representative "removed several corn stalks and took them with him when he left." Schroeder asserts in an affidavit that although he met with Wills and observed the cornfield damage, he did not "inspect the corn crop to learn the nature and extent of the loss to the crop due to an allegedly improper application of chemicals by

Schroeder Aviation, Inc." Ostlund has neither admitted nor denied that one of its representatives was present at the scene. Thus, although factual disputes might exist with regard to the extensiveness of the investigation, it is undisputed that the defendants had the opportunity to do so.

We further note that in jurisdictions which have adopted notice-of-claim statutes for crop damage similar to § 28–01–40, N.D.C.C., courts

ants have not demonstrated in what manner they suffered prejudice or an injustice by the lack of an opportunity for the agriculture commissioner to investigate the damaged crop.

Wills' corn crop was not "harvested" in this case. Consequently, that provision of the statute is inapplicable. It is undisputed that Wills' verified report of loss was properly filed within the 60–day time period. Accordingly, we conclude that the district court erred in dismissing Wills' action on the basis that he failed to timely file a verified report of loss under § 28–01–40, N.D.C.C.

Wills also asserts that the district court erred in dismissing his action against Schroeder in his personal capacity. The district court ruled that dismissal was proper because "Schroeder was at all times, acting on behalf of the corporation...."

■ An individual is personally responsible "for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person." Section 9–10–06, N.D.C.C. It is well settled that "[a] corporate agent cannot shield himself from personal liability for a tort he personally commits or participates in by hiding behind the corporate entity; if he is shown to have been acting for the corporation, the corporation also may be liable, but the individual is not thereby relieved of his own responsibility." *Oxmans' Erwin Meat Co. v. Blacketer*, 86 Wis.2d 683, 273 N.W.2d 285, 289 (1979). *Accord* § 3–04–02(3), N.D.C.C.; *Reule v. Bismarck Public School District*, 376 N.W.2d 32, 33 (N.D. 1985); *Schlosser v. Great Northern Ry. Co.*, 20 N.D. 406, 127 N.W. 502, 504 (1910). *See also* 3A Fletcher, Cyclopedia of the Law of Private Corporations § 1135 (1986); 18B Am.Jur.2d *Corporations* § 1877 (1985); *Bagge v. Dardis*, 389 N.W.2d 606 (N.D.1986).

In the instant case, material factual disputes exist as to whether Schroeder acted

negligently or participated in a negligent act. The fact that he was acting as an agent of Schroeder Aviation does not shield him from personal liability. We therefore conclude that the district court erred in granting summary judgment dismissing Schroeder in his individual capacity from the action.

Accordingly, both of the summary judgments are reversed and the case is remanded for further proceedings.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE, and GIERKE, JJ., concur.

---

have concluded that such statutes must be construed in favor of the injured party, and that substantial compliance with the statutory filing requirements is all that is necessary. *See, e.g.,*

*Olmstead v. Reedy*, 387 P.2d 631 (Okla.1963); *Bella v. Aurora Air, Inc.*, 279 Or. 13, 566 P.2d 489 (1977).