**DICKINSON AIR SERVICE, INC.,**
**Plaintiff and Appellee,**

v.

**Keary KADRMAS, Defendant**
**and Appellant.**

**Civ. No. 11167.**

Supreme Court of North Dakota.

Dec. 2, 1986.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellee; argued by Claudette M. Abel.

Malloy & Malloy, Dickinson, for defendant and appellant; argued by Harry L. Malloy.

GIERKE, Justice.

Keary Kadrmas (Kadrmas) appeals a judgment entered after the district court granted a motion made by Dickinson Air Service, Inc. (Dickinson Air) to dismiss Kadrmas' counterclaim. We affirm.

On January 2, 1984, Dickinson Air served a summons and complaint upon Kadrmas for a bill past due for aerial spraying services. Dickinson Air claimed that Kadrmas owed it the contract price of $2338.40 with interest, plus costs and disbursements. In his answer, Kadrmas admitted that he contracted with Dickinson Air and that the spraying services were performed. However, Kadrmas denied owing Dickinson Air for the crop spraying. Kadrmas alleged that Dickinson Air was negligent in applying the chemicals, causing damage to and destroying many russian olive and caragana trees planted in a shelter belt located adjacent to one of the fields that was treated. Kadrmas also served a counterclaim with his answer in which he alleged the aerial crop spraying by Dickinson Air was negligently performed and killed two tree rows valued at approximately $2,500.00.

The matter was tried in district court on October 18, 1985. Kadrmas admitted the contentions Dickinson Air asserted in its complaint and the trial proceeded only upon the issues presented by Kadrmas in his counterclaim. Accordingly, Kadrmas was permitted to present his case first. The only evidence presented to the trial court upon which it based its decision to grant Dickinson Air's motion to dismiss the counterclaim was presented by Kadrmas. This evidence included a number of exhibits and the testimony of Keary Kadrmas, his wife, Sharmane, and LaVerne Linnel, the extension agent for Dunn County.

Kadrmas' presentation at trial elicited the following facts: In June 1983, Kadrmas hired Dickinson Air Services to aerially spray approximately 592 acres of his wheat crop. The parties agreed upon a contract price and Dickinson Air performed its obligation under the contract by spraying Kadrmas' wheat fields sometime in June.

Subsequently, in the later part of July 1983, Kadrmas and his wife began to notice damage to seedling russian olive and cara-

gana trees located in a shelter belt adjacent to one of the fields sprayed by Dickinson Air. Both Mr. and Mrs. Kadrmas testified that they observed the trees at least every other day, and in late July or early August they noticed that the trees looked strange, droopy and not very healthy looking. Mrs. Kadrmas testified that both she and her husband realized the chemical spray must have reached the trees.[1] Kadrmas then contacted LaVerne Linnel in order to confirm his belief that it was the spray that damaged his trees.

Linnel testified that, in response to Kadrmas' request, he went out to the Kadrmas farm on either August 10th or August 12, 1983, to inspect the damage to the trees. Linnel also stated that within one week of his inspection he called and left a message at the Kadrmas business in Dickinson. Linnel's testimony was, "... I left a message at Kadrmas' Tire Shop that there was *spray damage* to their trees." (Emphasis added.) The court determined that August 19, 1983, was the latest date that Linnel could have given Kadrmas the phone message about the spray damage to his trees.

There was no further contact between Linnel and Kadrmas until October 3, 1983, when they inadvertently ran into each other at a bowling alley in Killdeer. During this chance meeting, a discussion ensued regarding the damage and problems that would result to the trees because of the chemical spray. Kadrmas again contacted Mr. Linnel in early November 1983 to inquire about any possible action they could take. Kadrmas then retained counsel and shortly thereafter served the required

claim report on Dickinson Air and filed the report of damage with the agriculture commissioner on November 14, 1983.

At the close of Kadrmas' presentation of his counterclaim, Dickinson Air moved to dismiss the counterclaim since Kadrmas had not met the condition precedent to filing a claim under § 28-01-40, N.D.C.C. Specifically, Dickinson Air asserted that Kadrmas had failed to timely file a verified report of his loss within sixty days from the date he knew of the damage. The district court continued the trial pending receipt of briefs from both parties on the motion.

On November 25, 1985, after reviewing the briefs, the trial court granted Dickinson Air's motion to dismiss the counterclaim based upon its belief that Kadrmas had failed to comply with the notice-of-claim requirements which existed in § 28-01-40, N.D.C.C. Judgment was entered against Kadrmas dismissing his counterclaim and awarding Dickinson Air the contract price of $2,338.40 with interest, plus costs. On appeal, Kadrmas asserts that the district court should not have granted the motion to dismiss his counterclaim. Specifically, Kadrmas takes issue with a factual finding made by the court. This finding related to the court's determination of the date upon which Kadrmas *knew* his tree damage was caused by the chemical spray. Accordingly, our review is limited to a determination of whether or not the district court's factual findings regarding the time that Kadrmas gained knowledge of the spray dam-

---

1. Testimony given by Sharmane Kadrmas revealed that both her husband and herself knew that it was the spray that had killed their trees:

"Q. Okay Mrs. Kadrmas, when is the first time that you saw anything that looked irregular with the shelter belt?
"A. Kerry [sic] was talking that it was time to till the trees and so it was either, I don't recall, the end of July or maybe the first part of August, we went out with the garden tractor and drove out there and there were no weeds to kill; they were all dead. The weeds between the trees were dead and there was no work to be done and I noticed the trees were sick looking.

"Q. Okay, what did you do then? Did you contact anyone at that time?
"A. No, I just told Kerry [sic] I realized something had happened to them and *we knew the crop was sprayed and we figured it must have sprayed the trees.*
"Q. Okay, who did you contact to look into it for you?
"A. My husband, we knew—. We weren't sure how much damage, do you mean?
"Q. Who did you contact?
"A. LaVern Linnel." [Emphasis added.]

age to his trees was clearly erroneous. Rule 52(a), N.D.R.Civ.P.

Section 28–01–40, N.D.C.C.,[2] provided:

*"Reports of loss through pesticide application required. No civil action shall be commenced arising out of the use or application of any herbicide, insecticide, fungicide or agricultural chemical by any applicator or operator, unless the claimant has filed a verified report of the loss with the state of North Dakota agriculture commissioner, together with proof of service of such verified report of loss upon the operator or applicator allegedly responsible and, if the claimant is not the person for whom such work was done, then also the person for whom such work was done within a period of sixty days from the occurrence of such loss or within sixty days from the date the claimant knew such loss had occurred, provided, however, if the damage is alleged to have been occasioned to growing crops, the report shall be filed prior to the time when fifty percent of the crop was harvested."* [Emphasis added.]

The sixty-day filing period included in the statutory language of § 28–01–40, N.D.C.C., is known as a notice-of-claim provision and acts as an abbreviated statute of limitations. *See, Wills v. Schroeder Aviation, Inc.*, 390 N.W.2d 544, 546 (N.D.1986); *Ernest v. Faler*, 237 Kan. 125, 697 P.2d 870, 875 (1985). This provision has been constitutionally validated as not violative of due process or equal protection. *Schroeder Aviation, Inc. v. DeFehr*, 283 N.W.2d 147, 150–52 (N.D.1979). In *Schroeder,* this Court held that the short temporal limitations presented in the statute have some rational basis supporting their purpose of providing a defendant (usually the aerial spray operator or the farmer who has hired him) with the means of ascertaining evidence before time makes his proof difficult or impossible to obtain. *Schroeder,* 283

N.W.2d at 152. This abbreviated filing requirement is necessary because of the nature of the subject matter involved in the statute. *Schroeder, supra.*

The practice of chemical aerial spraying places the applicator in a precarious position. The nature of the activity makes it practically impossible for the applicator to prevent chemicals from drifting onto neighboring crops or land. This is due to the effect of winds and the convection caused by differing air and surface temperatures, the minute size of the dust and spray particles used, and air disturbances caused by the aircraft itself. Annot., 37 A.L.R.3d 833, 837 (1971 and Supp.1986). Similarly, the crop being sprayed usually has a readily determinable duration. Crops, trees, flowers and shrubs all have a delicate seasonal life-span which can easily be upset by any number of problems. Planting, growing and harvesting seasons are all of short duration in the deciduous climate present in North Dakota. The Legislature, through § 28–01–40, N.D.C.C., recognized the exigencies of our climate and the need to provide aerial spray applicators with the opportunity to observe, investigate and determine the nature and cause of any damage they allegedly caused within a set time period. This time period was established at sixty days from the date of application of the chemical, sixty days from the claimant's knowledge of the damage to his crops, or before fifty percent of the growing crop is harvested. Section 28–01–40, N.D.C.C. This limitation affords the parties involved enough time to accumulate evidence of damage before the crop disappears or the evidence dissipates and becomes difficult or impossible to obtain. *Schroeder,* at 152.

North Dakota is in the minority of states that have enacted statutes providing that failure to adhere to the abbreviated notice-of-claim requirement bars civil actions for recovery of damages. *See, e.g.,* Kan.Stat.

---

**2.** Section 28–01–40, N.D.C.C., was repealed by the Legislature in 1985. In its stead, the Legis- lature enacted a similar provision, with minor

Ann. § 2–2457 (1982 & Supp.1985)[3]; Okla. Stat.Ann. tit. 2, § 3–95 A (West 1973 & Supp.1985); Or.Rev.Stat. § 634.172 (1985). Because of this harsh result, many of the states that preclude civil actions if the claimant fails to comply with the notice-of-claim requirement have judicially adopted "doctrines" which act to undermine the statutory limitations provided by their Legislatures.[4] We have previously held that compliance with the notice-of-claim provision of § 28–01–40, N.D.C.C., is a condition precedent to filing a civil claim arising out of the use or application of any pesticide. *Schroeder,* at 152. Nevertheless, in *Wills v. Schroeder Aviation, Inc.,* 390 N.W.2d 544 (N.D.1986), the Court noted that notice-of-claim provisions must be construed in favor of the injured party and that substantial compliance with the filing requirements is all that is necessary to effect a claim. *Wills,* at 546 n. 2.

In applying this analysis to the case at bar, it is apparent that the district court appropriately dismissed Kadrmas' counterclaim because he failed to meet the filing requirements presented in § 28–01–40, N.D.C.C. Section 28–01–40, N.D.C.C., directs a claimant to file a verified report with the chemical applicator and agricul-ture commissioner within sixty days after the chemical is applied or the claimant knows loss or damage has occurred to his property due to the effect of the aerial spray. Even construing the filing requirements in his favor, the facts clearly reveal that Kadrmas was aware of the spray damage in late July or early August 1983 and certainly knew of the spray damage by August 19, 1983. It is undisputed that Kadrmas' verified report was not filed with Dickinson Air, or the agriculture commissioner, until November 14, 1983. The filing occurred nearly *ninety days* after he had acquired the knowledge that the chemical spray had damaged his trees and over 120 days after the chemicals were applied to his wheat field.

These findings of fact, made by the district court, are amply supported by the record and are not clearly erroneous. Therefore, we affirm the judgment of the district court granting Dickinson Air's motion to dismiss Kadrmas' counterclaim.

Affirmed.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

changes, codified in Chapter 4–35, N.D.C.C., the Pesticide Act. *See,* § 4–35–21.1, N.D.C.C.

3. In *Ernest v. Faler,* 237 Kan. 125, 697 P.2d 870 (1985), the Kansas Supreme Court held that the notice-of-claim provision of its pesticide act violated the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution and the Kansas Bill of Rights. The Kansas Supreme Court analyzed the effect of notice-of-claim provisions involving claims between private citizens and instead of creating judicial anomalies in the application of its statute, invalidated the legislation. *Ernest,* 697 P.2d at 877–78.

4. The Oregon Supreme Court, in a number of cases, has held that "substantial compliance" with the notice-of-claim provisions is all the Legislature really required in its pesticide statute. *See, e.g., Bella v. Aurora Air, Inc.,* 279 Or. 13, 566 P.2d 489 (1977); *Cross v. Harris,* 230 Or. 398, 370 P.2d 703 (1962); *Loe v. Lenhardt,* 227 Or. 242, 362 P.2d 312 (1961).

Similarly, in *Olmstead v. Reedy,* 387 P.2d 631 (Okla.1963), the Oklahoma Supreme Court permitted a claim because the plaintiff had sub-stantially complied with the notice-of-claim requirements in its pesticide statute.

Finally, in *Short v. Jones,* 613 P.2d 452 (Okla. 1980), the Oklahoma Supreme Court created greater inroads into its aerial spray statute after a pecan tree owner sued a crop duster and adjacent land owner for herbicide damage to 40 acres of Short's pecan trees. *Short,* at 454. The crop duster and neighbor asserted that Short had not filed a written statement of damages as required by the Oklahoma notice-of-claim statute. *Short,* at 454–55; Okla.Stat.Ann. tit. 2, § 3–95 A (West 1973 & Supp.1985) The Oklahoma high court distinguished between crops and trees and held that since the pecan trees were real property (as opposed to personal property, *i.e.,* crops), the Oklahoma crop spraying notice-of-claim requirement was inapplicable to this situation. *Short,* at 454–56. Because Short was permitted to bring his action on an independent basis (damage to realty), his claim was not barred by the notice-of-claim statute. *Short, supra.*

MESCHKE, Justice, concurring.

I concur. The only issue fairly presented by this appeal is whether, as to the counterclaim, the district court's findings about the time that Kadrmas knew of the spray damage are clearly erroneous. I agree they are not. Affirmance of dismissal of the counterclaim is appropriate.

I write separately to suggest that this opinion should not be read too broadly. When properly raised, apart from a counterclaim, there may well be a defense of recoupment to offset the contract claim of the operator for his services in applying the agricultural chemical. It should not be barred by a statute which only provides that "[n]o civil action shall be commenced" unless a timely report of loss is made.

It is widely held that a statute of limitation does not defeat defensive "recoupment," where it arises out of the same transaction upon which the plaintiff's claim is made. *See* Annot., 1 A.L.R.2d 630, (*Claim barred by limitation as subject of setoff, counterclaim, recoupment, cross bill, or cross action*), (1948), particularly at 666, § 14 ("Recoupments; matters closely related to plaintiff's cause of action"). *See also,* 51 Am.Jur.2d *Limitation of Actions,* p. 656, § 77 ("Recoupment"), (1970); 20 Am.Jur.2d *Counterclaim, Recoupment, and Setoff,* p. 231, § 6 ("Nature and scope of remedy—recoupment") (1965).

Neither this opinion nor the prior opinion of this court in *Schroeder Aviation, Inc. v. DeFehr,* 283 N.W.2d 147 (N.D.1979) address the precise issue of recoupment. To the extent that *Schroeder* rules against all defensive use of a loss arising from application of agricultural chemicals, I believe it should be reconsidered. The toxic consequences of today's chemical compounds have become commonplace. Problems of proof as to causes of injuries from herbicides and pesticides are no greater than in other tort cases. In an agricultural state dependent upon growing crops, a statute against uncovering those wayward injuries should not be extended any further than its language commands. An abrupt bar against commencing a civil action should not be read to prohibit recoupment of accounts between participants for the costs and effects of their immediate transaction.